## JEFFERSON BRANCH BANK *vs.* SKELLY.

1. It is the general rule, that the construction given by State courts to State laws and constitutions are binding and conclusive upon the Federal courts; but the rule does not extend to cases in which this court is called on to interpret the contracts of States, though they have been made in the form of laws or by functionaries of the State in pursuance of State laws.

2. Fidelity to the Constitution of the United States makes it necessary, that in such a matter this court should not follow the construction of a State court with whose opinion it cannot concur, and it makes no difference in the obligation whether the contract is in the shape of a law or of a covenant by the State's agents.

3. The charter of a bank is a franchise, which is not taxable, as such, if a price has been paid for it, which the Legislature has accepted with a declaration, that it is to be in lieu of all other taxation.

4. The rule of construction is strict against the corporators and in favor of the public; and neither the right of taxation, nor any other power of sovereignty, will be held to have been surrendered, unless such surrender has been expressed in terms too plain to be mistaken.

5. But the State may make a contract not to exercise the taxing power, or to exercise it only within certain limits with respect to a particular subject, and such a contract once made cannot be rescinded by a subsequent legislative act.

6. The 60th section of the charter of the State Bank of Ohio, which requires that six per cent. of the dividends shall be set off for the use of the State, which sum the State consents to accept in lieu of all taxes to which the banks or their stockholders might otherwise be subject, is a contract, and a subsequent law increasing the taxes is a violation of the contract.

7. A provision of the State constitution adopted after the charter of the State Bank, that a higher tax might be imposed on all banks than that stipulated for in the charter of the State Bank, cannot be applied to the State Bank and its branches without a violation of the contract

Writ of error to the Supreme Court of Ohio. The Jefferson branch of the State Bank of Ohio brought trespass in the Com-

mon Pleas of Jefferson county against Alexander Skelly, and charged in their declaration that the defendant took and carried away from the banking-house of the plaintiff, at Steubenville, a certain quantity of gold coin of the value of seven thousand dollars, and converted it to his own use. The defendant pleaded specially, in justification, that he was treasurer of Jefferson county, and, as such, required and authorized by law to collect the taxes assessed in the county of Jefferson; that taxes to the amount of $5,568 88.9-10 had been assessed upon, and were then due from, the plaintiff, which it was the duty and right of the defendant to distrain for; and that the supposed trespass consisted in making such lawful distraint. The plaintiff replied that it was a banking corporation, organized under an act of the State Legislature, entitled "An act to incorporate the State Bank of Ohio and other banking corporations;" that, agreeably to the 60th section of said act, the plaintiff had always regularly and punctually paid to the properly authorized officers six per cent. of its profits; that the 60th section of the charter was a contract between the State and the plaintiff to assess or demand no other or greater taxes from the plaintiff than six per cent. on its profits; and that the taxes for which the defendant alleged that he had made the supposed distraint were assessed and demanded in pursuance of a law which was a violation of the said contract, and therefore void. The defendant rejoined, taking issue on the replication.

The question of law thus raised was, whether the State had a right to impose on the bank any taxes other than those which were stipulated for in the 60th section of the charter, the plaintiff asserting, and the defendant denying, that the section referred to was a contract which made any other or greater taxes illegal and unconstitutional. The verdict and judgment in the Common Pleas were in favor of the plaintiff for $6,292 80, with costs. The defendant appealed to the Circuit Court, where a verdict and judgment for the plaintiff were again rendered, but the judgment was arrested, and judgment finally given for the defendant. Thence the cause was taken, on the plaintiff's petition, to the Supreme Court of the State. The judges of the Supreme Court were of opinion that the said 60th section of

the act of the General Assembly of Ohio of the 24th of February, 1845, entitled "An act to incorporate the State Bank of Ohio and other banking companies," under the provisions of which the said Jefferson branch was organized, is not a contract within the meaning, and entitled to the protection, of that clause of the Constitution of the United States which provides that "no State shall pass any law impairing the obligation of contracts," and that, consequently, the subsequent laws under which the increased taxes were assessed and levied were valid. The judgment of the Circuit Court was, therefore, affirmed, and thereupon the plaintiff took this writ of error from the Supreme Court of the United States.

*Mr. Vinton,* of Washington city, for plaintiff in error. In this case the Supreme Court of Ohio adjudged:

1st. That the 60th section of the charter of the State Bank of Ohio was not a contract between the State and the bank, within the meaning, and entitled to the protection, of that clause of the Constitution of the United States which declares that "no State shall pass any law impairing the obligation of contracts."

2d. That the act of the General Assembly of Ohio, of the 13th of April, 1852, under which the tax in question was assessed against the bank, was a valid law, and obligatory on the bank, anything in said 60th section of said bank charter to the contrary notwithstanding; and that, consequently, the tax assessed under said act was a valid tax, and the bank was bound to pay the same.

The identical question presented by this record has heretofore been twice before this court for decision, and twice decided, after very elaborate examination of the question by the court in each case.

The first in the order of time is the case of the *Piqua Branch of the State Bank of Ohio* vs. *Knoop,* (16 How., 369.)

In that case, a tax was assessed upon the property of the Piqua branch, under an act of the Legislature of Ohio, passed in the year 1851, which the State attempted to collect by suit.

This court then decided that the 60th section of the bank

charter was a contract, and that the bank could not be otherwise taxed than in conformity to that contract, and that the act of 1851, which was in conflict with that contract, was invalid.

The other case was that of *Dodge* vs. *Woolsey*, (18 How., 331.) In that case a tax had been assessed on the Commercial Branch Bank of Cleveland, a branch of the State Bank of Ohio, under the tax act of the 13th of April, 1852, which is the same act under which the tax now in question was assessed. This court again went into an elaborate investigation of the question in that case, and again decided that the 60th section of the State Bank charter is a contract, and that the banks organized under it are subject to no other taxation, and that the act of 1852 impaired that contract, and was also invalid, so far as it was in contravention to that section of the bank charter.

If it should be contended by the defendant in error, as it was in the case of the *Piqua Branch Bank* vs. *Knoop*, and again in the case of *Dodge* vs. *Woolsey*, that the construction put upon the 60th section of the bank charter by the State court ought to be conclusive upon the courts of the United States, the answer to it will be found in the case of the *Ohio Life Insurance and Trust Company* vs. *Debolt*, (16 How., 432,) and *Mechanics and Traders' Bank* vs. *Debolt*, (18 How., 380.)

*Mr. Murray*, of Ohio, for defendant in error. Does the 60th section of the act passed February 24, 1845, entitled "An act to incorporate the State Bank of Ohio and other banking companies," constitute a contract, within the meaning of the 10th section of the first article of the Constitution of the United States, between the State and the banking companies organized under said act, as to the rate of taxation to which such banking companies shall be subjected?

This precise question has heretofore been submitted to this court, and by it decided in the affirmative. *Piqua Branch, &c.,* vs. *Knoop*, (16 How., 369.) But it can hardly be claimed that this one decision, made by a divided court, the majority only agreeing in the conclusion arrived at, but wholly disagreeing as to the reasons therefor, so far settled this question that it

is no longer an open one. A renewal of this decision is asked for because the question is one as to the construction of the constitution and laws of the State of Ohio, and it is the duty of this court to follow the construction given by the Supreme Court of that State. *O. L. I. & T. Co.* vs. *Debolt*, (16 How., 431;) *Elmendorf* vs. *Taylor*, (10 Wheaton, 150–9;) *Swift* vs. *Tyson*, (16 Peters, 1–18;) *Shelby* vs. *Guy*, (11 Wheaton, 361;) *Luther* vs. *Borden*, (7 How., 40;) *Neves* vs. *Scott*, (13 How., 271;) *Raymond* vs. *Longworth*, (14 How., 78–9;) *United States* vs. *Morrison*, (4 Peters, 137;) *Green* vs. *Neal*, (6 Peters, 291.)

The State of Ohio had, under the constitution of 1802, no power to exempt property from taxation so as to bind subsequent Legislatures. An act of incorporation, when accepted, can only constitute a contract between the grantor and grantees as to those rights, privileges, &c., which it was in the power of the grantor to grant. The whole doctrine of contracts, as resulting from an accepted charter, is based on the fact that the King of England had no power to revoke a charter or patent which he had once granted, and which had been accepted and acted upon by the grantees. The King never did grant, and had no power to grant, exemption from taxation, either in whole or in part, any more than he could have divested the Government of its right of eminent domain. Any grant of either would have been beyond his power, and void. Consequently it could have formed no part of any valid contract with his grantees. The Legislature of a State, then, even if they have succeeded to a certain extent to the prerogative of the King, have no power to make a grant of rights and privileges which it was not in the power of the King to grant; and if their right to make a contract, which cannot be revoked by a subsequent Legislature, is based upon the power of the King of England in similar cases, it must be taken subject to all the restrictions and limitations which apply to his exercise of this power. But the Legislature of Ohio, at the time of passing the tax law of April 5, 1859, and the prior laws changing the rule of taxation prescribed by the 60th section of the act of February 24, 1845, was inhibited from passing the same.

At the time of the passage of this act of February 24, 1845,

there was upon the statute-book of Ohio, in full force, an act passed March 7, 1842, (Ohio Law, vol. 40, p. 70,) which provided, that all subsequent corporations, whether possessing banking powers or not, were to hold their charters subject to alteration, suspension, and repeal, at the discretion of the Legislature. Now, if the Legislature in this act of February 24, 1845, had provided in express terms that said act and all rights, privileges, franchise, etc., thereby granted, should not, for a given term of years, be subject to alteration, repeal, or suspension, then it might, with some show of reason, be claimed that the prior act of March 7, 1842, was repealed by implication—a mode of repeal, however, which is never favored; but inasmuch as nothing of that kind is contained in said act, we are bound to presume that it was intended to be made in all respects subject to all general acts then in force having reference to corporations of a similar nature. This 60th section of the act of 1845, in several respects, is wholly wanting in those ingredients which are indispensable requisites to a contract.

That it was designed by the Legislature to constitute a contract between the State and banking companies organized thereunder, as to the rate of taxation to which they should be subjected during their existence, will not be presumed.

The contract, if one exists, must be contained in the express terms of the act itself; it must appear therein so plainly and obviously as to be beyond doubt; and if any other construction of the terms of the act than that which makes it a contract can be reasonably given to it, that construction will be adopted. *Providence Bank* vs. *Billings,* (4 Peters, 561;) *Charles River Bridge* vs. *Warren Bridge,* (11 Peters, 420;) *Debolt* vs. *O. L. I. & T. Co.,* (1 O. St. Rep., 573;) *United States* vs. *Arredondo,* (6 Peters, 738;) *Mills* vs. *St. Clair County,* (8 How., 581;) *Perrine* vs. *C. & D. C. Co.,* (9 How., 185;) *Cincinnati College* vs. *The State,* (19 Ohio Rep., 110;) *Richmond Railroad Co.* vs. *Louisiana Railroad Co.,* (13 How., 81;) *Lebanon Bank* vs. *Mangan,* (4 Casey, 452;) *Parker* vs. *Commonwealth,* (6 Barr, 411;) *Bank Pa.* vs. *Commonwealth,* (7 Harris, 152;) *Mott* vs. *Pennsylvania Railroad Co.,* (30 Pa. St. Rep., 24.)

Neither does it follow that by the language used by the Le-

gislature in this 60th section, it was intended or designed to create a permanent measure or system of taxation. *Preble County Bank* vs. *Russell*, (1 O. St. Rep., 313;) *Bank of Columbia* vs. *Okley*, (4 Wheaton, 234;) *Young* vs. *Bank of Alexandria*, (4 Cranch, 397;) *Crawford* vs. *Bank of Mobile*, (7 How., 297;) *B. & S. Railroad Co.* vs. *Nesbit*, (10 How., 396.)

Mr. Justice WAYNE. This case has been brought to this court by a writ of error to the Supreme Court of the State of Ohio.

Its purpose is to revise a judgment rendered by that court, in which it has, among other things, declared, contrary to the uniform decisions of this court upon the same subject-matter, that the 60th section of the charter of the State Bank of Ohio is not a contract within the meaning of that clause of the Constitution of the United States which provides, "that no State shall pass any law impairing the obligation of contracts."

We shall not now reargue the question, nor any point in connection with it, thinking it best to give, without addition, what have been the judgments of this court, when the matter in connection with the charter of the State Bank of Ohio has been before it. The reasoning of the Supreme Court of Ohio has, at all times, had our most respectful consideration. *Hoc non obstante*, however, it is again reproduced by that court as the foundation of its judgment, without other illustration than it had when we first were called upon to review it; and we are now asked to reconsider it by the District Attorney, James Murray, Esquire, upon an intimation, that this court might be induced to reverse its decision in the *Piqua Branch* case, because that judgment of this court involves the construction of the constitution and laws of the State of Ohio differently from what both had been decided to be by the Supreme Court of the State, and that the Supreme Court of the United States should follow or conform to the conclusion of the former, at the same time admitting that there had been an inconstancy of interpretation by the Supreme Court of Ohio in its judgments upon the 60th section of the charter of the State Bank of Ohio.

We answer to this, as this court has repeatedly said, when-ever an occasion has been presented for its expression, that its rule of interpretation has invariably been, that the construc-tions given by the courts of the States to State legislation and to State constitutions have been conclusive upon this court, *with a single exception,* and that is when it has been called upon to interpret the contracts of States, "though they have been made in the forms of law," or by the instrumentality of a State's authorized functionaries, in conformity with State le-gislation.  It has never been denied, nor is it now, that the Supreme Court of the United States has an appellate power to revise the judgment of the Supreme Court of a State, when-ever such a court shall adjudge that not to be a contract which has been alleged, in the forms of legal proceedings, by a litigant, to be one, within the meaning of that clause of the Constitu-tion of the United States which inhibits the States from passing any law impairing the obligation of contracts.  Of what use would the appellate power be to the litigant who feels him-self aggrieved by some particular State legislation, if this court could not decide, independently of all adjudication by the Supreme Court of a State, whether or not the phraseology of the instrument in controversy was expressive of a contract and within the protection of the Constitution of the United States, and that its obligation should be enforced, notwith-standing a contrary conclusion by the Supreme Court of a State?  It never was intended, and cannot be sustained by any course of reasoning, that this court should, or could with fidelity to the Constitution of the United States, follow the construction of the Supreme Court of a State in such a mat-ter, when it entertained a different opinion: and in forming its judgment in such a case, it makes no difference in the ob-ligation of this court in reversing the judgment of the Supreme Court of a State upon such a contract, whether it be one claimed to be such under the form of State legislation, or has been made by a covenant or agreement by the agents of a State, by its authority.

We have thus given, very much in what has been the lan-guage of this court, what has been always its attitude in re

spect to the revisal of the judgments of the Supreme Court of a State upon contracts which have been declared not to be within the protection of the Constitution of the United States.

We will now show, that this opinion may be better understood, in connection with the citations which will be produced to sustain it, the origin of this controversy from its proceedings and pleadings.

It was an action of trespass brought by the plaintiff in error against the defendant Skelly, for forcibly entering the plaintiff's banking-house, and taking and carrying away gold coin, the money of the plaintiff. To this charge the defendant pleaded the general issue, not guilty, and two pleas of justification substantially the same. They are: That the defendant, as treasurer of the county, had received from the auditor for the collection of taxes, a tax duplicate of $5,303 70, which had been assessed in the year 1852 upon the plaintiff's property for State and county taxes, and other purposes; that being unpaid after the time allowed by law for its payment, he had seized and taken from the plaintiffs banking-house $5,568 88 in money of the plaintiff, to satisfy the tax and penalty for default of payment, as he had the right officially to do. To these pleas the plaintiff replied: That the bank prior to 1850 had been incorporated and organized as a banking company, in conformity with an act of the General Assembly entitled "An act to incorporate the State Bank of Ohio and other banking companies," passed the 14th of February, 1845, and as such had carried on business as a branch of the State Bank of Ohio, and was then doing so; that it had at all times, as required by the 60th section of the act, set off to the State six per centum on its profits, deducting from it the expenses and its ascertained losses for the six months preceding; and that the cashier had punctually, within ten days after having done so, informed the auditor of the State that it had been done, and that it had paid the same, whenever required, to the treasurer, upon the order of the auditor, and that they had been and were then ready to pay the amount according to law.

It is alleged, that the bank had performed all required by the 60th section of the act of incorporation, and that from its

acceptance of the act and compliances with it, a contract had been made between the State and the bank, according to the 60th section, that the six per centum on the profits of the bank, to be divided semi-annually and set off to the State of Ohio, should be in lieu of all taxes which the bank and its stockholders, on account of the stock held by them, were bound to pay; and that the assessment set forth in the defendant's pleas of justification was a direct violation of the contract between the State and the banking company. To this replication the defendant made no answer, and a judgment was rendered against them for want of a rejoinder.

In that state of the case, it was carried by appeal into the District Court of Ohio, and there submitted to a jury upon the plea of not guilty, and a verdict was rendered for the plaintiff. But after that judgment, the verdict was arrested by the District Court, upon the ground that the matter set forth in the plaintiff's replication was no answer to the defendant's pleas of justification, and that those pleas were a bar to the plaintiff's recovery.

The case was then carried by appeal to the Supreme Court, and the judgment of the District Court was affirmed, on the express ground that the 60th section of the bank charter was not a contract between the State and the bank, within the meaning of that clause of the Constitution of the United States which provides that "no State shall pass any law impairing the obligation of contracts;" and that the act of the General Assembly, passed the 13th April, 1852, for the assessment and taxation of all property in the State, according to its true value in money, was binding on the Bank of the State of Ohio, and its branches.

Having given the case in its pleading and proceedings in all their irregularities, we now proceed to state what have been the uniform decisions of the Supreme Court of the United States in respect to the protective clause against legislation by the States impairing the obligation of contracts, and particularly of that legislation of Ohio comprehending the present controversy, which its Supreme Court has affirmed to be constitutional, and which is now regularly before us for review

and reversal, in conformity with previous decisions of this court.

First, as to the decisions of this court in respect to the power of a State Legislature to bind the State by a contract, we refer to the case of *Billings* vs. *The Providence Railroad Bank*, that of the *Charles River Bridge Company*, and that of *Gordon* vs. *The Appeal Tax Court*, and to the case of *The Richmond Railroad Company* vs. *The Louisa Railroad Company*, (13 How., 71.) The last, in principle, was identical with that of *The Charles River Bridge* vs. *The Warren Bridge*. The opinion of the majority of the court was put upon the ground that the Legislature of a State had a right to bind the State by such a contract, and the three dissenting judges in that case were of the opinion, as the report of the case will show, not only that the Legislature might bind the State by such a contract, but that it had bound it, and that the charter of the Louisa Railroad Company violated the contract, and impaired its obligation. This court has also decided that the charter of a bank is a franchise, which is not taxable as such, if a price has been paid for it, which the Legislature has accepted, with a declaration that it was to be in lieu of all other taxation. *Gordon* vs. *Appeal Tax Court*, (3 How., 133.) The rule of construction in such a case is, that the grant of privileges and exemptions to a corporation are to be strictly construed against the corporators, and in favor of the public; that nothing passes but what has been granted in clear and explicit terms; and that neither the right of taxation, nor any other power of sovereignty, will be held by this court to have been surrendered, unless such surrender has been expressed in terms too plain to be mistaken.

In respect to the power of a State Legislature to exempt persons, corporations, and things from taxation, and to bind the State by such enactment, we refer to the case of *New Jersey* vs. *Wilson*, (7 Cranch, 164.) The circumstances of that case were these: A legislative act declaring that certain lands should be purchased for the Indians, and that such lands should not be thereafter subject to taxation, it was decided by this court, that such language made a contract between the

Indians and the State, which could not be rescinded by a subsequent legislative act, and that such a repealing act was void under that clause of the Constitution of the United States prohibiting the States from passing any law impairing the obligation of contracts. The case shows what has been the fidelity of this court to the Constitution in this particular. The illustration will be more decisive by briefly stating the circumstances of the case. In 1758 the State of New Jersey purchased the Indian title to lands in that State, and as a consideration for the purchase, bought a tract of land as a residence for the Indians, having previously passed an act declaring that such lands should not be subject thereafter to any tax by the State, any law or usage, or law then existing, to the contrary notwithstanding. The Indians, from the time of purchase, lived upon the land until the year 1801, when they were authorized, by an act of the Legislature, to sell the land. This last act contained no provision in respect to the future taxation of the land. Under it, the lands were sold. In October, the Legislature repealed the act of August, 1758, which exempted the lands from taxation, subjecting them to taxes in the hands of the purchasers. They were assessed and demanded; the purchasers resisted; and, upon the trial of the case, the taxes imposed by the act of 1804 were declared to be unconstitutional. This court then said, the privilege, though for the benefit of the Indians, is annexed by the terms which create it to the land itself, and not to their persons. In the event of a sale, the privilege was material, because the exemption from taxes enhanced its value.

Our reports have other cases of a like kind, passed upon by this court with like results. In every case, the vital importance of a State's right to tax was considered, and the relinquishment of it by a State has never been presumed. The language of the court has always been cautious, and affirmative of the right of the State to impose taxes, unless it has been relinquished by unmistakable words, clearly indicating the intention of the State to do so. This court has always said and acted upon it: "We will not say that a State may not relinquish its right to tax in particular cases, or that a con-

sideration sufficiently valuable to induce a partial increase of it may not exist, but as the whole community is interested in preserving it undiminished, it has a right to insist that its abandonment ought not to be presumed in a case in which the deliberate purpose of a State to abandon it does not appear."

We are aware, that the very stringent rule of construction of this court, in respect to taxation by a State, has not been satisfactory to all persons. But it has been adhered to by this court in every attempt hitherto made to relax it; and we presume it will be, until the historical recollections, which induced the framers of the Constitution of the United States to inhibit the States from passing any law impairing the obligation of contracts, have been forgotten. This court's view of that clause of the Constitution, in its application to the States, is now, and ever has been, that State Legislatures, unless prohibited in terms by State constitutions, may contract by legislation to release the exercise of taxing a particular thing, corporation, or person, as that may appear in its act, and that the contrary has not been open to inquiry or argument in the Supreme Court of the United States.

This brings us to the consideration of the legislation of Ohio, upon which its Supreme Court has passed judgment on the case now before us.

It has been decided three times by this court, that the 60th section of the charter of the State Bank of Ohio was a contract between the State and the bank within the meaning, and entitled to the protection of the Constitution of the United States against any law of the State of Ohio impairing its obligation; and that the acts of Ohio, upon which the Supreme Court of Ohio has assumed the State's right to tax the State Bank of Ohio and its branches differently from the tax stipulated for in the 60th section of the charter, were and are unconstitutional and void.

The first case in the order of time is that of the *Piqua Branch, &c., &c.,* vs. *Knoop.* In that case, we declared the act of 1845 to be a general banking law, the 59th section of which required the bank to make semi-annual dividends, and that the 60th section required the officers of the banks to set off six

per cent. of such dividends in the manner prescribed in it for the use of the State, which sum the State had consented to accept, and would accept in lieu of all taxes, to which the banks or their stockholders might otherwise be subject; that the act was a contract, fixing the amount of taxation, and not a rule or law prescribed until changed by the Legislature of the State of Ohio; that the act of 1851, to tax banks and other stocks the same as property, was an act to increase the tax upon the banks, and that such law being a violation of the State's contract, that the banks were not bound to pay the same; that a municipal corporation, in which is vested some portion of the administration of the Government, may be changed at the will of the Legislature; but that a bank, in which stock is held by individuals, is a private corporation, and its charter is a legislative contract, which cannot be changed without its consent; and in connection, this court again repeated that, by the 60th section of the act of 1845, the State bound itself by contract to levy no higher tax than was mentioned in it upon the bank, should it be organized under that law during the continuance of their charters.

Two years afterward, in 1855, the particulars of the decision, as they have just been stated, were reaffirmed. It also then added, that a stockholder in a corporation has a remedy in chancery against the directors of a bank, to prevent them from doing acts which would amount to a violation of its charter, or to prevent them from any misapplication of its capital, which might lessen the value of the shares, if the acts intended to be done shall amount to what the law deems to be a breach of trust; also that a stockholder in a bank or other corporation had a remedy in chancery against individuals, in whatever character they profess to act, if the subject of complaint is an imputed violation of a corporate purchase, or the denial of a right growing out of it, for which there is not an adequate remedy at law; and if the stockholder who complains be a resident of another State than that in which the bank or corporation has its *habitat,* that he may then resort to the courts of the United States for a remedy.

That the fact, that the people of the State of Ohio had, in the

'year ——, adopted a new constitution, in which it was declared that taxes should be imposed upon banks in the manner provided for by the-act of 13th April, 1852, cannot be applied to the State Bank of Ohio or its branches, without a violation of the contract contained in the charter of 1845. Having now noticed every essential point made in the argument in support of a claim, to subject the Bank of the State of Ohio and its branches to a higher rate of taxation than that stipulated in its charter, we will close this opinion in the language of the Chief Justice, in Knoop's case: "I think, that, by the 60th section of the act of 1845, the State of Ohio bound itself by a contract to levy no higher tax than the one there mentioned upon the banks or stocks of the banks organized under that law during the continuance of their charters. In my judgment, the words used are too plain to admit of any other construction."

We shall direct a reversal of the judgment of the Supreme Court of Ohio in this case, and direct a mandate to be issued accordingly.

*Judgment of the Supreme Court of Ohio reversed.*