Mr. Justice SWAYNE
delivered the opinion of the court:
The demurrer brings under examination the objections taken by the defendant to the validity of the coupons upon which this suit is founded.
These objections will be considered as we proceed.
I. “ That there is no authority in the charter of the city of Muscatine under which money may be borrowed to aid in the construction of railroads.”
The charter gives the city authority “ to borrow money for any object in its discretion, if at a regularly notified meeting under a notice stating distinctly the nature and object of the loan, and the amount thereof, as nearly as practicable, the citizens determine in favor of the loan, by a majority of two-thirds of the votes given at the election.”
When the bonds and coupons were issued, the acts of the legislature of Iowa of the 25th of January, 1855,* were in force. These acts in connection with the provision of the charter furnish, in our judgment, a conclusive answer to this objection.
The effect of the acts was considered in the case of Gelpcke et al. v. The City of Dubuque,† decided at this term, to which we refer.
*391 H. Because the interest was made payable in New York city, instead of at the treasury of the city of Muscatine■
It was according to the general usage to make such bonds and coupons payable in the city of New York. It added to the value of the bonds and was beneficial to all parties. No legal principle forbids it. The power of a municipal corporation to make any contract, does not depend upon the place of performance, but upon its scope and object. A city authorized to establish gas-works and water-works, and to gravel its streets, may buy water, coal, and gravel, beyond its ' limits, and agree to pay where they are found or elsewhere. The principal power, when expressed, draws to it by necessary implication, the means of its execution. This is a settled rule in. the construction of all grants of authority, whether to governments or individuals. If the subject admitted of doubt, we should hold that the city, having acted upon its own construction, and drawn in others to take the securities and advance their money upon it, is now concluded from denying that construction to be the true one.*
TTT- u Because in the stipulation to pay the interest smi-annvbally at the rate of ten per cent, the authority conferred by the vote ivhich limited the rate of interest to ‘ not higher than ten per cent. per annum,’ was transcended, and a usurious rate agreed to be paid.”
This objection has no foundation. 'When a statute fixes the rate of interest per annum, it has always been held that parties may lawfully contract for the payment of that rate, before the principal debt becomes due, at periods shorter than a year.†
IV. “ Because the stock of the Mississippi and Missouri Bail-road Company, for <which said bonds and coupons were issued, was, without authority from the city, placed in the hands of a trustee, and entirely beyond its control.”
This objection, though urged in the argument, does not arise upon the record. All that appears touching the subject is, that the bond of $1000, as set out in the exhibit af *392 taclied to the complaint, besides binding the city to pay, provides that the holder, upon surrendering it at any time before maturity “ to A. C. Flagg, trustee,” should be entitled to ten shares of the stock of the raih'oad company. To such an arrangement there is no legal objection. The city had a right to apply the stock for which the bonds were given, or its proceeds, at any time, in discharge of the bonds.
V. “ Because, under the authority to borrow a sum of money, no money was ever borrowed, by the city; but instead, these bonds were delivered to the officers of the Mississippi and Missouri Bail-road Company, and by their agents and brokers sold to the plaintiffs at a price greatly below their par value.”
The amended answer avers, “ That the said bonds were by the officers of said railroad company, and their agents and brokers, sold to the plaintiffs at a price greatly below their par value; that at the time said bonds and coupons were received by said plaintiffs, they had full knowledge of the fact that said bonds had been issued for the purpose of aiding in the construction of said Mississippi and Missouri Railroad.”
The city was authorized to issue the bonds in order to borrow money to pay for the stock. If the company chose to receive the bonds in payment for the stock, retaining a lien on tlie stock until the bonds were paid, there was no legal obstacle in the way of their doing so. The object of issuing the bonds was thus accomplished, and no injury was do-: e to those who were to pay them. It is neither averred in the answer, nor claimed in the argument, that the rai Iroad company took them at less than their face. It does not appear that any one objected then, and no one can object now. After the bonds passed into the hands of the railroad company, the company was at liberty to sell them on such terms as it might deem proper.
The' act of January 25, 1855,* by a clear implication, authorizes cities to give their bonds in payment of their subscriptions of railroad stock, and expressly authorizes the *393 bonds to “ be sold by tbe company at such discount as may be deemed expedient.” "What is implied has the same effect as what is expressed.*
YI. “ The ordinance on which the vote for a loanwas taken was void, because, it submitted three distinct propositions in one, and in such a manner as to cut off an effective opposition from all voters who were against the tohole of the propositions.”
The record shows that all the votes cast, except five, were in favor of the loan. The city and citizens adopted and acted upon the ordinance as valid and sufficient. The citizens voted, and the city authorities issued the bonds. No one interposed to prevent their issue. It is not questioned that all the parties acted in good faith, and the city can not now be heard to object- to the regularity of its own proceedings. A party taking the bonds was bound to look to the legal authority under which the public agents acted. If that were sufficiently comprehensive, he had aright to presume that those empowered to act and acting under it had complied with its requirements.†
YTT, “ It is insisted that the legislature had no constitutional power to authorize the issue of such bonds, and that hence they are void.”
This is sufficiently answered by the opinion of this court in Gelpcke v. City of Dubuque, decided at this term.‡
The judgment below must be reversed, and the cause remanded for further proceedings, in conformity to this opinion.
• Judgment accordingly.

 Chaps 128 and 149.

 Ante, 220, No. 81, not(

 Van Hostrup v. The City of Madison, ante, p. 291.

 Mowry v. Bishop, 5 Paige, 98.

 Chap. 128.

 United States v. Babbit, 1 Black, 55.

 Commissioners of Knox Co. v. Aspinwall, 21 Howard, 539. [And see Mercer Co. v. Hacket, ante, 83. Rep.]

 Ante, 175. See also Rowan et al. v. Runnels, 5 Howard, 134; Pease v. Peck, 18 Id., 599; State Bank of Ohio v. Knoop, 16 Id., 392; Jefferson Branch Bank v. Skelly, 1 Black, 436.