THE KNOXVILLE & OHIO R. R. CO. *v.* JNO. H. HICKS.

1. CONSTITUTIONAL LAW. *Construction. Legislative power. Power to grant charters, with exemption from taxation.* The Legislature possesses inherently all legislative power, and the Constitution is to be construed as limiting or restricting, but not as granting the power. The power to grant charters of incorporation, with exemptions from taxation, binding upon the State, so that the charter, after acceptance, becomes a contract and irrepealable, falls properly under the head of legislative power.

Cases cited : Union Bank *v.* State, 9 Yer., 490; Hope *v.* Deaderick, 8 Hum., 1.

2. SAME. *Constitution of 1834 did not restrict the power.* Section 28, of Article 2, of the Constitution of 1834, to-wit: "All lands liable to taxation, held by deed, grant or entry, town lots, bank stock, etc., and such other property as the Legislature may, from time to time, deem expedient, *shall be taxable*," imposed no restriction upon the power of the Legislature to stipulate for total or partial exemptions from taxation in charters of incorporation.

3. SAME. *Sale of property. When it passes this immunity.* Under an act of the Legislature the State loaned its bonds to a railroad corporation, which by its charter, was exempt from taxation; said act reserving a right in pursuance of which a subsequent act was passed, providing for the enforcement of the State's lien in a court which was expressly empowered to determine all questions touching the rights of the State, and all other parties. In a proceeding instituted by the State against said corporation, it was adjudged, in *pursuance of said act,* that a sale of the property and franchises of the company would vest the purchasers with " all the rights, privileges and *immunities,*" appertaining to the same. *Held,* that under the decree immunity from taxation passed to the purchasers; that the State having provided for the adjudication of these questions, and the purchase having been made on the faith thereof, it cannot question the validity of the adjudication.

Case cited : E. T., V. & Ga. R. R. Co. *v.* Hamilton County, MS., Knox.

FROM ANDERSON.

Appeal from the Circuit Court. D. K. YOUNG, J.

JNO. BAXTER for complainant.

WM. CULLAM and H. R. GIBSON for defendant.

McFARLAND, J., delivered the opinion of the court.

The plaintiff, a corporation, is the owner of a railroad extending from Knoxville to Careyville in this State. It paid to the collector of Anderson county the taxes assessed against it under protest, and brought this action to recover the amount back, claiming that the road and its appurtenances are exempt from taxation. The facts are presented by an agreed case.. The railroad in question was constructed and owned by a corporation chartered by the Legislature of this State, under the style of The Knoxville and Kentucky Railroad Company. By an act passed 25th of February, 1856, which became part of its charter, the capital stock, and dividends, road and fixtures were exempted from taxation until the stock paid a dividend equal to the legal rate of interest. There can be no question but that the exemption was granted in express terms. The company had borrowed from the State a large number of its bonds, under the general internal improvement act of 1851–2, and having failed to pay the interest upon these bonds, proceedings were instituted in the chancery court at Nashville, under acts of the Legislature passed for the purpose, for the sale of this and other delinquent roads, to enforce the State's lien. The sale was made and confirmed, certain individuals being the purchasers. They afterwards organized under the general laws passed since the

adoption of the new Constitution, as a corporation, under the style of the Knoxville and Ohio Railroad Company, (the present plaintiff) for the purpose of becoming the owner of the road, with its franchises, and by a decree of the court at Nashville, title was vested accordingly.

Two important questions have been presented and ably argued. 1st. Whether the Legislature had the power, under the Constitution of 1834, then in force, to grant the exemption in question; and 2d. If the exemption was valid in favor of the original company, does that exemption still exist in favor of the present plaintiff as purchaser.

It has been settled, since the Dartmouth College case, that the charter of a private corporation, when accepted, becomes a contract, which cannot afterwards be impaired by legislative action when the power to do so is not reserved. Stipulations for exemption from taxation, or the payment of a bonus in lieu of taxation, are important elements of the contract, and are protected by sec. 10 of art. 1 of the Constitution of the United States, and a similar provision in the Constitution of the State. That the legislature of a State has the power to bind the State by such contracts, where that power is not denied by the Constitution, is also a result of these authorities. As often as this question came before the Supreme Court of the United States it was earnestly resisted, upon the ground that to permit one legislature to barter away the State's inherent right of taxation so as to bind successive legislatures, is subversive of the government itself, and

allows the burthens of taxation, which should fall upon all alike, to be shifted from the property of wealthy corporations to the shoulders of the remaining tax-payers. If this was a new question, it would deserve the most serious consideration, and courts would now doubtless hesitate long before establishing it; still, it is too well established to be at once overthrown, and so the counsel for the State concede. See *Gordon* v. *Appeal Tax Court*, 3 Howard, —; 4 Wheaton, 518; 4 Peters, 514; 1 Black, 436; 3 Wallace, 264; 7 Cranch, 164.

But these authorities all go upon the assumption that there is no constitutional restriction upon the power of the legislature to grant charters of the character in question. If this provision of the charter granting the exemption be in violation of the Constitution of the State, it would not be protected. Did the Constitution of 1834 of this State, in force at the time, restrict the power of the legislature in this regard? It must be borne in mind, that in determining what power the legislature of a State may rightfully exercise, the Constitution of the State is not to be regarded as a grant of power. The Legislature possesses inherently all legislative power, and the Constitution is to be construed as limiting or restricting, but not as granting the power.

The first question, then, is, does the power to grant charters of incorporation, with exemptions from taxation or other like stipulations binding upon the State, so that the charter after acceptance becomes a contract and irrepealable, fall properly under the head of legis-

lative power? That such power properly belongs to the legislative department of a State, when there is no special limitation of the power, is too well settled to be questioned. The decisions of the Supreme Court of the United States are numerous and uniform, beginning with the Dartmouth College case and coming down to the present time. *Pacific R. R.* v. *McGuire,* 20 Wall.; *Wilmington R. R.* v. *Reid, sheriff,* 13 Wall.; *Humphrey* v. *Pegues,* 16 Wall.; 1 Black, 436. It being, therefore, properly legislative power, it exists inherently, and we must look to the Constitution to see if any limit or restriction is placed upon the power of the Legislature in this regard. And, to understand properly the language of the Constitution of 1834 on this subject, we must bear in mind the terms of the previous Constitution, the powers that had been exercised thereunder, the changes made and the evils to be remedied, at the same time considering the different parts of the Constitution bearing upon the question. The Constitution of 1796 was especially defective in regard to securing equality of taxation, or the taxation of property according to its alue; and this was the evil intended to be remedied by the change made, and embodied in sec. 28 of art. 2, in regard to the taxation of property according to its value, and securing the equality of taxation. But is there anything in the first clause of this section intended to limit the power of the Legislature to grant exemptions from taxation in charters of incorporation, or (which is the same) to stipulate for a bonus or fixed sum in lieu of taxation? The language is:

Railroad Company *v.* Hicks.

"All lands liable to taxation held by deed, or entry, town lots, bank stock, etc., and such other property as the Legislature may, from time to time, deem expedient, *shall be taxable.*"    Was this intended to mean that thereafter the Legislature should not have the power to stipulate for total or partial exemptions from taxation in charters of incorporation?    The Convention of 1834 comprised among its delegates some of the ablest lawyers the State has ever produced.    That they were familiar with the principles of the Dartmouth College case, decided some fifteen years previously and followed in other cases, cannot be doubted. It is apparent, also, that they were familiar with the fact that the Legislature, under the previous Constitution, had exercised the power of granting charters with total or partial exemption, or contracting for a special bonus in lieu of taxation—notably, in the instance of the charter of the Union Bank, granted only two years before: *Union Bank* v. *The State,* 9 Yer., 490— and that the power had never been questioned.    With these facts prominently before the Convention, if it was their purpose to restrict this power of the Legislature, we should expect to find such restriction expressed in unequivocal language.    But the only direct provision in regard to the power of the Legislature in respect to charters of incorporation is in the proviso to sec. 7 of art. 11, to the effect that the restriction upon the power of the Legislature to grant special privileges, immunities and exemptions was not to be construed to affect the power of the Legislature to grant such charters of incorporation as they might

deem expedient for the public good, thereby leaving this power as it previously existed. See *Hope* v. *Deaderick*, 8 Hum., 1. If it had been the purpose of the Convention to restrict the power of the Legislature in this particular, this would certainly have been the appropriate place to insert the restriction. But, so far from doing so, we find only the proviso above referred to, which was intended only to exclude the idea that the first clause of the section against the granting of special privileges, immunities or exemptions, was intended to limit the power of the Legislature in regard to granting charters of incorporation.

From this the conclusion seems necessarily to follow, that the Legislature was still left the power to pass laws creating bodies corporate, with all the rights, privileges, immunities and exemptions which it was usual to vest in such fictitious persons under the general principle of law previously recognized; and, as we have seen, the power in question was previously recognized by the general law and the authorities of this State. We do not say that rights, privileges or immunities might be granted inconsistent with other positive restrictions of the Constitution; and this brings us again to the language of sec. 28 of art. 2, to-wit: "All lands liable to taxation held by deed, grant or entry, town lots, bank stock, etc., and such other property as the Legislature may, from time to time, deem expedient, *shall be taxable.*" It has never been contended that this made it imperative upon the Legislature to tax all property. That body might tax or

Tillman *v.* Cocke.

omit to tax, that is for the time exempt. If a tax was imposed it was required to be upon the value of the property and according to the rules of equality. This is made more apparent by the change made by the Constitution of 1870, which declares that all property, real, personal and mixed, *shall be taxed*, subject to the right of the Legislature to exempt in certain cases which are specifically defined. It is argued that the above clause makes all the property mentioned and such other as the Legislature might deem expedient, as continually subject to the power of taxation. That is, that it shall be and remain taxable, and that this forbids any action by the Legislature which would place property beyond the power of taxation. On the other hand, this section may well be construed as having no reference to the property of corporations to be created, and as leaving the power of the Legislature in this regard as it stood before. This is the more natural construction, when we take this section in connection with the clause before referred to, and find that no express restriction is placed upon the power conceded to have previously existed in the Legislature in respect to corporations, in that clause which refers directly to the power to grant such charters. Again, the Constitution of 1834 declared that a well-regulated system of internal improvement should be encouraged, and for such purposes the Legislature has often appropriated the revenues of the State, and further loaned the credit of the State to the extent of immense sums. The power to do this has never been questioned. If the Legislature can thus appropriate

and use the public money, it is difficult to see why it may not stipulate for the release of part of the public taxes for the same purpose, as it would be in effect the same. Upon this declaration of the Constitution the Legislature have from time to time freely acted. The State was without railroads. It was regarded as a public necessity that roads should be constructed. They were to be constructed by corporations—in a sense private corporations—and yet as it was believed that the resources of the State would be thereby developed and the public prosperity promoted, *they were regarded as public improvements*, and to be encouraged. *Pacific R. R.* v. *McGuire*, 2 Wal., 36. It was foreseen, that as a private speculation such enterprises would not pay, especially in those portions of the State where the cost of constructing the roads would be unusually heavy ; perhaps in no instance has the individual who has invested his money in capital stock of a railroad in this State as an original stockholder, ever been able to realize his investment, the stock selling generally at very low figures. All this was to some extent foreseen, and to meet this difficulty and *induce* capitalists to risk their money in the enterprise, this proposition to exempt the property to be thus created was made, in consideration of the benefits expected to result to the public from the public improvement. The property now sought to be taxed was not then in existence; it has been created in part at least by the money invested upon the faith of this stipulation—much of it, for aught we know, may have been brought from other States. The peo-

Tillman *v.* Cocke.

ple of the State have certainly, to some extent, realized from the improvements the benefits anticipated, whether to the full extent or not is immaterial. It may or it may not have been a judicious contract upon the part of the State. The necessities for revenue now demand contribution from every available source. The property of some of these roads are valuable and exemptions are now odious. But if the law and the contract was valid at the time, we must in good faith abide by its terms according to its fair and just import.

Upon this question it may be added, that where there has been no judicial construction of a clause of the Constitution, the courts have given great weight to the construction given to the clause by other departments of the government. *Stewart* v. *Land,* 1 Cranch, 299; *Martin* v. *Hunter,* 1 Wheaton, 351; 6 Wheaton, 418; 12 Wheaton, 290. Several successive Legislatures that met while this Constitution was in force, a period of thirty-six years, granted charters of incorporation, with total or partial exemptions for a time, and during the entire period the power was never questioned. On the contrary, all departments of the government acquiesced and obeyed the laws thus passed, and under these nearly all of our public improvements have been constructed. This uniform action upon the part of the State authorities is entitled to great weight. Upon this question we conclude that the Legislature had the power to stipulate for the exemption in question.

This brings us to the next question, which is, Did

this exemption pass to the new corporation by this sale? It is argued that at the time of this sale, which was after the new Constitution went into effect, the Legislature could not grant an exemption from taxation; it is, however, admitted that it might transfer from one to another the existing exemption, but it is denied that this was done. After the appointment of commissioners upon the part of the State, to take the necessary steps against the delinquent railroads, it was found that in any attempt to sell the roads serious questions would arise as to the rights of the State and the defendants. Whether the State had the right to sell out the entire property and franchises of the companies, or only the State's lien or interest thereon, and what that interest was; whether the State could sell for the entire debt or only the unpaid interest on the bonds; how the rights of stockholders and others would be affected. To meet these difficulties an act was passed the 22d December, 1870, in pursuance of the right reserved in the general internal improvement act, which directed a bill to be filed in behalf of the State against the delinquent railroad companies in the chancery court at Nashville, which by the act was vested "with exclusive jurisdiction to hear, adjudge and determine all questions of law and matters of controversy of whatever nature, whether of law or of fact, that have arisen or may arise touching the rights and interest of the State, and also of the stockholders, bondholders, creditors and others in said roads." . . . "Also to declare the exact amount of the indebtedness of each of said companies

to the State, and likewise to define as may be thought proper what shall be the rights, duties and liabilities of a purchaser of the State's interest in said roads, or either of them, and what shall be the reserved rights of said companies, stockholders and others respectively as against said purchasers after said sale, under the existing laws of this State."

The bill was accordingly filed, and by a decree before the sale the amount of the State's debt was ascertained and adjudged, and also that the same was a lien upon the entire property, rights, privileges and franchises of the companies; that a sale would transfer all the interest, leaving none in the stockholders or corporation; that a sale of any of the franchises of said company would vest the purchasers with all the rights, privileges and *immunities* appertaining to the franchises by the charter and amendments. A sale was made, reported and confirmed and title vested, as before stated. Without reciting the parts of the various decrees and proceedings bearing upon the question, it is sufficient to say that it is distinctly adjudged that not only the property of the old company, but all its rights, franchises, privileges and immunities, as defined by the charter and laws and the decrees in the cause, passed to and vested in the new company.

We are of opinion that the State having expressly provided for the adjudication of all these questions by the tribunal appointed, and the purchase having been made upon the faith thereof, the validity of the adjudication cannot be now questioned by the State. But it is argued that under the decree vesting the

new company with the rights and franchises of the old company, the exemption from taxation did not pass; that this decree could not have the effect of putting the new company exactly in the shoes of the old in all respects, so as to make the new company the same legal entity as the old; this result could only be effected by a purchase and transfer of all the stock of the old company, or by the soverign power of the State through the Legislature where that is allowable, and as a consequence, although the property of the old company was transferred to the new with the privileges and franchises necessary to the use and enjoyment thereof, yet the legal existence of the old corporation was not hereby completely annihilated, but said corporation still existed, and to that existence the exemption in question still adheres as an incident not having been in terms transferred by the Legislature. We cannot clearly appreciate the idea of the right of exemption existing in the old company after all its property and franchises appertaining to the use thereof was gone from it, and vested in the new. Even if the old corporation still existed in the abstract, it certainly no longer had a practical existence for the purposes of its creation, and certainly to say the exemption in question still existed in the old company when there was nothing upon which it could operate, would have no meaning.

It is manifest that when the purchasers came to contract for the entire road and franchises, it was important to know whether they were to have, as purchasers, the right to own and use the property free

Tillman *v.* Cocke.

from taxation and specified in the old charter. This was an important element in fixing the price. The property, with this exemption, was worth more than it would have been without it. A sale of the property and franchises without this exemption would practically have taken from the old company all that was valuable to it, and yet the purchaser would not acquire what the old company owned; the old company had the property and franchises with the exemption, while the new one would acquire the property and franchises without the exemption. This would be selling the entire property and franchises of the old company for the payment of its debts, and yet destroying an important element of its value—refusing to give the old company the benefit of the exemption in the sale, and yet destroying its existence so far as of practical importance. By this means the exemption would be practically repealed, and the State would be allowed to resume the right of taxation over the property and franchises in question, which it could not have done had the old company continued to be the owner.

This argument is used to show that the parties must have understood from the adjudications to which we have referred, that they were purchasing with the exemption and with every element of value which attached to the property and franchises in the hands of the old company, and such we think is the fair and legitimate construction of the proceedings referred to. The case of *Trank* v. *McGuire et als.*, from the Supreme Court of the United States, is wholly different.

There the said road, etc., was purchased by the State of Missouri, and of course the exemption was merged, as the exemption from the right of the State to tax would mean nothing when the State itself became the owner of the property. And so the State having become the absolute owner, when it came to sell the said road again, could sell with or without the right of exemption without injustice to any one; but as the new Constitution of Missouri, before the resale by the State, had forbidden the grant of such exemption, it was held that the Legislature could not authorize a sale with the exemption. But here the State never became the owner of the road, and the principle of the case does not apply.

This opinion was prepared more than a year ago, and since then we have seen the recent case decided by the Supreme Court of the United States, *Morgan* v. *Louisiana*, 3 Otto, 217. There are probably more points of difference between that case and this; the exemption there was of the capital stock, works, workshops, warehouses, vehicles of transportation and other appurtenances of the company. It is certainly clear, as said in that case, that a purchaser of an engine or car from the company would not hold such property exempt from taxation, or that the purchaser of a horse would not hold it exempt from execution because it had been exempt in the hands of the persons from whom it was purchased. But here the entire road as a whole was held free from taxation; it was pur chased with all its appurtenances as a whole, with the franchises of the old company, that is, the right to

Tillman *v.* Cocke.

use the property as the old company had the right to use it, and if the purchaser acquires all that was valuable, the exemption must attach to the property, especially as the decree settles that all rights and immunities passed, and nothing remained in the old company. With great respect for the high tribunal making the decision, we are not convinced by it that the exemption in such a case is a mere personal privilege that cannot pass to a purchaser of the entire road with franchises, without a new legislative grant; the exemption being part of the charter, cannot be repealed by the Legislature; it is a right for which a consideration has been given, but the decrees of the court in this case are in pursuance of the act of the Legislature and are equivalent to a legislative grant. Though the State has obtained the benefit of a sale purporting to be with the exemption, we think the case of *Tomlinson* v. *Branch*, 15 Wal., 460, sustains our conclusions. See also *Philadelphia, Wilmington and Baltimore R. R.*, 10 Howard, 376.

It will be observed that the question whether an exemption is granted in the charter in the first instance, or what language is necessary to grant an exemption, as presented at the present term in the case of the *E. T., V. & Ga. R. R. Co.* v. *Hamblen County*, is a different question from the one we are now considering, as to the transfer of such exemption upon a sale of an entire road and franchises to a purchaser; the latter question is not governed by the same reasons or rules of construction, but the decrees

Tillman *v.* Cocke.

in this case pass to the purchaser the entire franchise, with the rights and immunities appertaining thereto.

We hold upon both questions for the plaintiff, and decree that the judgment be reversed and judgment entered for the plaintiff.

FREEMAN, J., said:

We place our concurrence as to the first question, upon the ground that this being a public improvement, the Legislature might grant it aid and appropriate money for its use, and releasing taxes in its favor is the same in effect; but we reserve the question as to the power of the Legislature to make such exemptions in favor of private corporations not chartered for the purpose of constructing public improvements.