## BUTZ *v.* CITY OF MUSCATINE.

1. The limitation in the act of 22d January, 1852, of the legislature of Iowa, amendatory of the charter of the city of Muscatine, and which authorized the council to levy a tax *not exceeding one per cent.* on the assessed value, in any one year, of the property of the city, is a limitation touching the exercise of the power of taxation in the ordinary course of municipal action.

2. It does not apply to a case where a judgment has been recovered against the city. Such a case, on the contrary, falls within the provisions of the code of 1851 (re-enacted in 1860), which make obligatory the levy of a tax as early as practicable *sufficient* to pay off the judgment with interest and costs: the extent of the limitation, in such a case, is the only limitation of the amount to be levied.

3. Where a question involved in the construction of State statutes practically affects those remedies of creditors which are protected by the Constitution, this court will exercise its own judgment on the meaning of the statutes, irrespectively of the decisions of the State courts, and if it deems these decisions wrong will not follow them; and this whether the case come here from the Circuit Court in ordinary course, or from the Supreme Court of the State under the 25th section of the Judiciary Act.

4. A remedy, which the statutes of a State, on what this court considers a plainly right construction of them, give for the enforcement of contracts, cannot be taken away, as respects previously existing contracts, by judicial decisions of the State courts construing the statutes wrongly.

5. The extent to which the writ of mandamus from the Federal courts can give relief against decisions in the State courts, involves a question respecting the process of the Federal courts; and, that being so, it is peculiarly the province of this court to decide all questions which concern the subject.

IN error to the Circuit Court of the United States for the District of Iowa.

The case was this:

A code of the State of Iowa, adopted in 1851, and known as the code of that year, after enacting that neither the public property of any city corporation necessary to carrying on the general purposes for which the corporation was established, nor the property of private citizens shall be levied on to pay the debt of such corporation, goes on to enact that if any corporation against which judgment has been obtained has no property which can be seized, " a tax must be levied

on as early as practicable sufficient to pay off the judgment, with interest and costs." And by the code a failure on the part of the officers of the corporation to levy such a tax in the case prescribed, makes them personally responsible for the debt.

With this code in force, the city of Muscatine was incorporated; and in 1852, it was enacted specially in reference to that city, by an amendment to its charter, that an assessor should be appointed, whose duty it should be " to make an assessment of the property of the city subject to taxation, and upon whose assessment the council may levy a tax of not exceeding one per cent. upon the value, in any one year."

With this provision in force, the city, which under its charter had " power to borrow money for any purpose in its discretion," &c., did borrow, under that power, in the year 1854, money, issuing bonds, of which one Butz, of Pennsylvania, bought a large amount.

In 1860, the State of Iowa re-enacted the provisions of its already mentioned code of 1851, on the subject of executions. But on a question whether those general provisions of the code applied to a case like that of the charter of Muscatine, where there was a limitation about taxes, the Supreme Court of Iowa determined, more than once, that it did not.*

With these State decisions unquestioned in any way in the State courts, Butz, whose bonds were unpaid, and who had a return of *nulla bona* to an execution against the city of Muscatine, after judgment had by him on them against the city, applied in 1867 to the court below, the *Circuit Court of the United States* for Iowa, for a *mandamus* against the city officers to levy, under the provisions of *the code*, a tax " sufficient to pay off the judgment, with interest and costs." The city, relying on the limitation in its amended charter, and on the decisions of the Supreme Court of the State, made return, that under the laws of Iowa they were not permitted to levy a tax exceeding in amount one per cent. upon the taxable property of the city for all purposes in any one year;

---

* See Clark *v.* Davenport, 14 Iowa, 494; Porter *v.* Thompson, 22 Id. 391.

that this amount had been levied for the year 1867; that a part of it had been collected, and that for a part the taxpayers were delinquent; that the entire amount collected had been expended for the necessary current and incidental expenses of the city, and that the entire amount levied and collected for the year 1868 would be needed for the same purposes for that year, and that those expenses were a paramount lien upon the fund.

The plaintiffs demurred to the return. The Circuit Court overruled the demurrer. The plaintiffs elected to abide by it, and judgment was entered against them.

The questions now here were—

1. Whether the construction given by the Supreme Court of Iowa to the provisions of the codes and to the charter of the city was one which in the judgment of this court could, in itself, be sustained?

2. If not, then—since the effect of the decisions in question was to deprive creditors of the only practicable means of enforcing against certain corporations which had made them, contracts solemnly entered into by those corporations prior to the date of the decisions—whether this was a case where the Supreme Court would adhere to its rule, confessedly obligatory in most cases, that it would follow, irrespectively of what it might itself think of the correctness of such decisions, the decisions given by the State courts in the construction of their own State statutes; the question here more particularly arising on a writ of error in ordinary course to a Circuit Court of the United States, and not on a writ to the Supreme Court of the State, in which case this court has power by the Judiciary Act to re-examine and reverse any decision of such a court, where there has been drawn in question the *validity* of a statute of or an authority exercised under any State, on the ground of their being repugnant to the laws of the United States, and the decision has been in favor of such their validity.

*Mr. Grant, for the creditor, plaintiff in error; no counsel appearing for the city of Muscatine.*

Mr. Justice SWAYNE delivered the opinion of the court, first stating the case.

This case is brought before us by a writ of error to the Circuit Court of the United States for the District of Iowa.

The case as presented in the record is as follows: Upon the petition of the relator an alternative writ of mandamus was issued to the defendants in error, wherein it was set forth that it had been represented to the court that the relator, on the 16th of May, 1867, recovered a judgment against the city of Muscatine for the sum of $57,615$\frac{16}{100}$, with interest at the rate of seven per cent. per annum, upon which judgment an execution had been issued and returned " no property found;" that the business of the corporation was managed by the mayor and aldermen, whose duty it was to cause its taxes to be levied and collected, and to provide for the payment of all judgments recovered against it; that this judgment was for interest on certain bonds executed by the city in 1854; that it was the duty of the mayor and aldermen to provide for the payment of the interest as it fell due; that it was their duty to levy and collect taxes and pay such judgments when recovered; that a demand had been made on the mayor and aldermen to levy and collect the taxes necessary to pay this judgment, interest, and costs; that they had refused and denied their authority to do so; that the city has no property liable to execution; that by the laws of Iowa when the debt was created and when the judgment was recovered, the public property of the city and the private property of its citizens were exempt from levy and sale to pay this debt and judgment, but that it was made the duty of the mayor and aldermen, as early as practicable after it was recovered, to levy a tax sufficient to pay the judgment, with interest and costs; that they had refused to perform that duty, and that the relator was without other adequate remedy at law.

The mayor and aldermen were therefore commanded forthwith to levy a sufficient tax on the taxable property of the city—for the year 1867—to pay the judgment, interest, and

costs, and to pay them, or to appear and show cause why they refused to do so.

The defendants in their return set forth—

(1.) A denial of the duties alleged to rest upon them.

(2.) That under the laws of Iowa they are not permitted to levy or collect a tax exceeding in amount one per cent. upon the taxable property of the city for all purposes in any one year; that this amount has been levied for the year 1867; that a part of it has been collected and a part is delinquent; that the entire amount collected has been expended for the necessary current and incidental expenses of the city, and that the entire amount levied and collected for the year 1868 will be needed for the same purposes for that year, and that those expenses are a paramount lien upon the fund.

Other matters are set forth in the return which it is not necessary particularly to mention.

The plaintiffs demurred to the return. The court overruled the demurrer. The plaintiffs elected to abide by it, and judgment was entered against them.

By the statute of Iowa of 22d of January, 1852, entitled "An act to amend the charter of the city of Muscatine, approved February 1, 1851," it was enacted that an assessor should be appointed, whose duty it should be "to make an assessment of the property of the city subject to taxation, and upon whose assessment the council may levy a tax of not exceeding one per cent. upon the value in any one year." This statute was in force when the writ was issued and when the return was made. If there were no other statutory provisions bearing on the subject it would be conclusive in support of the judgment rendered by the court below.

The code of 1860, chapter 110, title "Execution," declares as follows: "Sec. 3274. Public buildings owned by the State, or any county, city, school district, or other civil corporation, and any other public property which is necessary and proper for carrying out the general purpose for which any such corporation is organized, are exempt from execution. The property of a private citizen can in no case be levied up on to pay the debt of a civil corporation."

"Sec. 3275.. In case no property is found on which to levy, or which is not exempted by the last section, or if, after judgment, the creditor elect not to issue execution against such corporation, he is entitled to the amount of his judgment and costs in the ordinary evidences of indebtedness issued by that corporation; and, if the debtor corporation issues no scrip or evidence of debt, a tax must be levied as early as practicable, sufficient to pay off the judgment with interest and costs."

"Sec. 3276. A failure on the part of the officers of the corporation to comply with the requirements of the last section, renders them personally responsible for the debt."

These regulations were contained in the code of 1851, and have been in force ever since. They were re-enacted in the code of 1860, and have a controlling effect upon the determination of this case. The limitation in the act of 1852, touching the exercise of the power of taxation by the city council, applies to the ordinary course of their municipal action. Whenever that action is voluntary, and there is no debt evidenced by a judgment against the city, to be provided for, one per cent. is the maximum of the tax they are authorized to impose. But when a judgment has been recovered, the case is within the regulations of the code. Those provisions are then brought into activity, and operate with full force, until the judgment, interest, and costs are satisfied. The limitation in the act of 1852 has no application in such cases, and imposes no check, if larger taxation be necessary. The contingency is one not contemplated, and not provided for by the act of 1852. If the legislature had intended to qualify the requirement prescribed by the code, it is to be presumed it would have done so, in language as clear as that which it has employed to express the duty to be performed. It leaves no room for doubt or construction. Nothing can be more simple and direct than the terms in which the levy of a sufficient tax is enjoined. The extent of the necessity is the only limitation, express or implied, in the code of the amount to be levied. We cannot interpolate a restriction by importing it from another act which has no necessary rela-

tion to the class of cases for which the code intended to provide. When the judgment is recovered the duty arises, and it can be satisfied only by paying the debt, interest, and costs, in the manner prescribed. The source whence the means are to be drawn is described, and full power is given to collect them.

There is no difficulty as to authority to levy a tax of the requisite amount, whatever it may be. Section 3276 of the code declares, that a failure on the part of the officers of the corporation to perform the duty enjoined, shall render them "personally responsible for the debt."

In the construction of a statute, what is clearly implied is as effectual as what is expressed.*

The minutest details could not have made the meaning and effect of these provisions clearer than they are. The limitation in the act of 1852 is confined to the city of Muscatine. The regulations of the code are general in their terms, and apply to all the municipal corporations mentioned in section 3274.

If these views be not correct, the position of the judgment creditor is a singular one. All the corporate property of the debtor is exempt by law from execution. The tax of one per cent. is all absorbed by the current expenses of the debtor. There is neither a surplus nor the prospect of a surplus which can be applied upon the judgment. The resources of the debtor may be ample, but there is no means of coercion. The creditor is wholly dependent for payment upon the bounty and the option of the debtor. Until the debtor chooses to pay, the creditor can get nothing. The usual relations of debtor and creditor are reversed, and the judgment, though solemnly rendered, is as barren of results as if it had no existence. Such are the effects which must necessarily follow from the theory, if maintained, of the defendants in error. Nothing less than the most cogent considerations could bring us to the conclusion that it was the intention of the law-making power of so enlightened a State

---

* United States v. Babbit, 1 Black, 61.

to produce, by its action, such a condition of things in its jurisprudence.

The writ of mandamus is the appropriate remedy, and the relator is entitled to the benefit of it.

There are several adjudications of the highest court of the State more or less adverse to the views we have expressed. We do not deem it necessary more particularly to advert to them. Entertaining the highest respect for those by whom they were made, we have yet been unable to concur in the conclusions which they announce. It is alike the duty of that court and of this to decide the questions involved in this class of cases, as in all others, when presented for decision. This duty carries with it investigation, reflection, and the exercise of judgment. It cannot be performed on our part, by blindly following in the footsteps of others and substituting their judgment for our own.

Were we to accept such a solution we should abdicate the performance of a solemn duty, betray a sacred trust committed to our charge, and defeat the wise and provident policy of the Constitution which called this court into existence.

The defendants in error have not submitted any brief or argument. We have had no assistance from them in this way. But it has been suggested in their behalf that we are concluded by the more limited interpretation of the provisions of the code which have been given to them by the Supreme Court of the State.

To this we think there are several answers:

1. In all the cases brought here under the 25th section of the Judiciary Act this court has never hesitated to determine for itself the construction and effect of any statute of a State, brought under review, without reference to the previous adjudications of the highest court of the State upon the subject. In the opinion delivered in the case of the *Jefferson Branch of the State Bank of Ohio* v. *Skelley,*\* it was well asked of what value would the appellate power of this court be to

---

\* 1 Black, 436.

the party aggrieved, if such were not the rule.    In that case and in all the other cases brought here, involving the same question, an' act of the legislature of Ohio was pronounced invalid, and the judgments of the Supreme Court of the State were reversed.    Cases may be brought here from the Circuit Court of such a character that it is necessary to the right administration of justice that we should proceed upon the same principle in deciding them.    Indeed, questions which are identical, may be brought here in both ways. Under such circumstances it will hardly be insisted that State adjudications are to control in one case and not in the other.    Our duty depends upon the questions involved, and not upon the channel through which the case comes before us.    Where the settled decisions in relation to a statute, local in its character, have become rules of property, these remarks have no application.    In such cases this court will, as it always has done, follow such adjudications.    The cases of a different character, involving State statutes, in which the adjudications of the courts of the States in relation to them have been departed from by this court, extend in an unbroken series from an early period after its organization to the present time.

2. It is set forth in the writ that the judgment was recovered upon bonds issued by the city in 1854.    This not being denied by the return, according to the settled law of pleading, is admitted.    The act of 1852 and the provisions of the code were in force at that time, and entered into and formed a part of the contract of the parties.    They prescribed one of the remedies to which the bondholders were entitled in the event of default by the city.    It has been uniformly held by this court that such remedies are within the protection of the Constitution of the United States, and that any State law which substantially impairs them is as much prohibited by that instrument as legislation which impairs otherwise the obligation of the contract.*    If the remedy be taken away the contract is in effect annulled.    Nothing is left of

---

* Bronson *v.* Kinzie, 1 Howard, 297.; McCracken *v.* Hayward, 2 Id. 608.

it, of any value to the party whose rights are thus invaded. This subject was fully considered in *Van Hoffman* v. *The City of Quincy.*\* It was there held that laws for the collection of the requisite taxes, existing when the bonds were issued, subsequently repealed, still subsisted for the purposes of the contract, and that a writ of mandamus might issue from the Circuit Court to enforce them. Here the remedy is taken away; not by a subsequent repeal, but by subsequent judicial decisions. The effect upon the contract is the same as if the provisions of the code had been repealed. This court construes all contracts brought before it for consideration, and in doing so its action is independent of that of the State courts, which may have exercised their judgment upon the same subject.† This is one of the functions we are called upon to perform in this case. The fact that one of the elements in the case is a statute of the State does affect the legal result.‡ We are of the opinion that under the statutes of Iowa, in force when the contract was made, the relator is entitled to the remedy he asks, and that this right can no more be taken away by subsequent judicial decisions than by subsequent legislation. It is as much within the sphere of our power and duties to protect the contract from the former as from the latter, and we are no more concluded by one than the other. We cannot in any other way give effect to the contract of the parties as we understand it. This contract was entered into in 1854. The earliest of the adjudications to which we have referred was made in 1862. If the construction ultimately given to the statute had preceded the issuing of the bonds, and become the settled law of the State before that time, the case, as regards this point, would have presented a different aspect.

3. The case involves the process of the courts of the United States. It is peculiarly the province of this court to decide all questions relating to that subject.§

The judgment is REVERSED and the cause will be remanded

---

\* 4 Wallace, 557.　　† Swift *v.* Tyson, 16 Peters, 19.

‡ Jefferson Branch of the State Bank *v.* Skelley, 1 Black, 436.

§ Riggs *v.* Johnson County, 6 Wallace, 166.

to the court below, with instructions to sustain the demurrer, and to proceed

IN CONFORMITY WITH THIS OPINION.

Mr. Justice FIELD did not sit in the case.

Mr. Justice MILLER, dissenting; the CHIEF JUSTICE concurring in the dissent.

In the case of *Warren* v. *Leffingwell*,* this court, speaking by my learned brother who has just read its opinion, declared that " the construction given to a State statute by the highest judicial tribunal of such State, is regarded as a part of the statute and is as binding upon the courts of the United States as the text;" and it was further said that " if the highest judicial tribunal of a State adopt new views as to the proper construction of such a statute and reverse its former decision, this court will follow the latest settled adjudications." This was announced as the doctrine of this court on a full review of numerous reported cases.

When at the succeeding term of the court the first of a series of suits based on bonds issued by municipalities in Iowa came before us, it was found that such bonds could not be sustained consistently with that doctrine. Accordingly the court, by the same learned member, in the case of *Gelpcke* v. *Dubuque*,† delivered its opinion declaring that, in cases of contracts, it would not follow the later decisions of the State courts construing their own constitution where the consequence would be to declare such contracts void, *if there had been prior decisions that they were valid.* And as late as the last term, in the case of *Lee County* v. *Rogers*,‡ the court, speaking by Mr. Justice Nelson, distinctly recognizes the existence of those prior decisions of the State courts, under which the bonds were taken by the holders, as the ground on which the subsequent decisions of the same court are disregarded.

The opinion of the court in the present case, delivered by the same learned judge who, on its behalf, in *Leffingwell*

* 2 Black, 599        † 1 Wallace, 175.        ‡ 7 Id. 181.

v. *Warren*, declared that this court would follow the latest settled adjudication of the State courts, and in *Gelpcke* v. *Dubuque* only claimed to modify that doctrine so far as to hold contracts valid which had the support of some prior decisions of the State courts, now holds, in a matter which does not involve the validity of contracts, but a construction of State statutes on the amount of tax which may be levied under them, that the repeated decisions of the State courts on that subject, in which courts there have never been any contrary decisions, will be disregarded entirely, and that this court will give to such statutes a construction directly opposed to that by which the State courts are governed.

It is an entire and unqualified overthrow of the rule imposed by Congress and uniformly acted on by this court up to the year 1863, that the decisions of the State courts must govern this court in the construction of State statutes.

There is not here even the excuse that the decisions concern the validity of a contract, for the contract is admitted, and the bondholder has his judgment in the Circuit Court, based on the contract.

But it relates to the question of what taxes are authorized to be levied by State statutes, a question it would seem of all others most proper to be determined by the State courts.

Nor is there any pretence that the statute as construed by the State court impairs the obligation of a contract, because the limitation of the amount of taxes which might be levied by the city of Muscatine existed long before the bonds were issued which are sought to be enforced by this proceeding, and this limitation was a part of the very statute under which those bonds were claimed to be issued, namely, the charter of the city of Muscatine. It was under this very charter, with this express limitation of the taxing power, that this court held these bonds to be valid.*

The provision of the code of 1851, which required the officers of municipalities to levy the taxes necessary to pay judgments against them, was in existence when the charter

---

* Meyer v. The City of Muscatine, 1 Wallace, 384.

of Muscatine was created, which limited the taxing power of its authorities to one per cent. per annum. The later law must repeal the former if they are inconsistent. But they are not so. It is only necessary to hold that persons giving credit to the city, with a knowledge of this limit to its taxing powers, must do so on the condition of waiting until that amount of tax will pay them, or until the legislature shall remove the restriction; and that within that limit the code gives them a right to compel the exercise of the taxing power to pay the debt so created. Such has been the reasonable construction given to the code by the courts of Iowa for many years and by the Circuit Court of the United States for that district for several years past, and never contradicted by any court until the present time.

These frequent dissents in this class of subjects are as distasteful to me as they can be to any one else. But when I am compelled, as I was last spring, by the decisions of this court, to enter an order to commit to jail at one time over a hundred of the best citizens of Iowa, for obeying as they thought their oath of office required them to do, an injunction issued by a competent court of their own State, founded, as these gentlemen conscientiously believed, on the true interpretation of their own statute, an injunction which, in my own private judgment, they were legally bound to obey, I must be excused if, when sitting here, I give expression to convictions which my duty compels me to disregard in the Circuit Court.