BROOKS (LIGHTNER v.). See Case No. 8,-344.

## Case No. 1,954.

BROOKS et al. v. MEMPHIS et al.

[3 Cent. Law J. (1876) 356.] [1]

Circuit Court, W. D. Tennessee.

COURTS — CONFLICT OF JURISDICTION — FEDERAL AND STATE PROCESS — CONSTITUTIONAL LAW — TAXATION—JUDICIAL COMITY.

1. Where there is an unsatisfied judgment in a circuit court of the United States against a municipal corporation, and the court upon a proper proceeding has by peremptory mandamus specifically directed the levy and collection of a tax for the payment of the judgment, the decision of all the questions that arise in the course of the levy and collection of the tax belongs to the circuit court of the United States. Thus, whether the writ of mandamus was properly awarded, whether the property from which it is sought to collect the tax is liable to taxation, whether the mode of arriving at the value of the property taxed is a lawful mode, are all questions for the circuit court of the United States. And that court having the jurisdiction, will, in some mode, control the operation of its process, so as to prevent injustice or wrong to any one affected by it. But a state court is powerless to interfere with the action of the corporation or its officers in the levy or collection of the tax under the mandamus.

[Cited in U. S. v. Jefferson County, Case No. 15,472; Apperson v. Memphis, Id. 497.]

2. Where it is sought to control the execution of process, a summary application by motion, instead of plenary proceedings by bill, should be insisted on, save in those instances where a review by an appellate court is desired.

3. A contract with a municipal corporation was made and the work performed, in reliance upon a mode of taxation, enabling the corporation to perform its part, which afterwards was declared to be unconstitutional by the supreme court of the state. The legislature afterwards supplied the place of the invalid law by another, which gave the power to levy a tax to pay the debt. Judgment having been obtained and a mandamus applied for to enforce its collection, the latter law was repealed. The repeal was disregarded, and the same rule applied as though the latter law had existed at the date of the contract.

4. A state constitution provided that no "retrospective law, or law impairing the obligation of contracts should be passed." Under this clause the legislature has no right to repeal the only adequate existing remedy to enforce an existing judgment, without providing some other reasonable mode of enforcement in its place.

5. From an express grant of power to a municipal corporation, to create a debt for a specified purpose, a power of taxation for its payment, will, in the absence of some other adequate means of payment, be implied, although at the date of such grant there is a statutory limitation upon the corporation's general power of taxation.

6. The greatest respect will be paid to the practical construction, given by the legislative and executive departments to constitutional provisions in respect to taxation, and their construction will be implicitly followed by the federal courts, unless most manifestly erroneous.

[1] [Reported by W. M. Randolph, Esq., and here reprinted by permission.]

7. Although in some instances the federal courts will delay judgment, to await decisions in state tribunals, and follow such decisions when made, such course was deemed highly impolitic, and was not adopted, where by mandamus to pay a final judgment, a tax had been directed in conformity with the common usages of the state, and the objections urged against the lawfulness of the tax had not been raised in other cases, or as to taxes levied for other purposes.

In equity.

This was an application to Hon. H. H. EMMONS, judge of the sixth circuit, to prevent the collection of a tax upon the capital of the plaintiffs [Brooks and others], who are merchants in Memphis, levied under a mandamus from the circuit court of the United States, for the district of West Tennessee, to pay a judgment in favor of Talmadge E. Brown, as surviving partner of T. E. Brown & Co., against the city of Memphis. The facts necessary to be understood are: In the years 1867 and 1868, the city of Memphis entered into contracts for paving different streets of the city, some with Nicolson pavement, and some with stone, and undertook to charge the cost of the work on the owners of the lots abutting the pavement laid down, in proportion to the frontage of their respective lots on the streets or alleys paved. The authority to make the contracts was contained in an act of the legislature passed in November, 1866. Many of the owners of the property assessed paid their proportions of the cost of the pavement, whilst others refused to pay, and a litigation to enforce payment by those refusing was the result This litigation was determined by the supreme court of Tennessee in the year 1872, by a decision that the act of the legislature of November, 1866, was unconstitutional, and that the contracts for the paving, so far as they attempted to charge the cost on the owners of the abutting lots, were void. T. E. Brown & Co., who had become the assignees of the contracts for the laying of the Nicolson pavement, had a large balance due them for paving done, and J. & M. Loudon, the contractors for the stone paving, had likewise due them a considerable balance. The city, by the original contracts, had guaranteed the payment by the property owners of their respective assessments according to the terms of the contracts, which were half cash on the completion of the work, and the balance, in equal instalments, in thirty, sixty and ninety days. T. E. Brown & Co. brought an action against the city for the balance due them, and after a litigation, which was finally disposed of by the supreme court of the United States, they recovered in the circuit court of the United States at Memphis, on the 16th March, 1875, a decree for about $292,000.00, which was the amount then due them after allowing all payments. After the supreme court of Tennessee had decided that the act of November, 1866, which provided for charging the cost of paving on the abutting property, was unconstitutional, the legislature in March, 1873, passed an act providing that the city should have power to levy a tax, in addition to all other taxes allowed by law to be levied, sufficient in amount to pay the entire cost of the paving laid down under the contracts which undertook to charge the cost on the abutting property, and which had been held void. On the 22d day of March, 1875, T. E. Brown & Co. filed their petition in the circuit court of the United States at Memphis, asking the allowance of an alternative writ of mandamus to be directed to the city, requiring it to levy a tax for the payment of their judgment. The alternative writ of mandamus was awarded and issued the same day. It was subsequently answered by the city, and on a demurrer to the answer, the alternative writ was made peremptory on the 30th March, 1875, and a judgment pronounced that the city proceed each year, for the years 1875 and 1876, respectively, to levy and collect, at the same time and in the same manner that it collected other taxes, a tax on all its taxable property, sufficient in amount to pay $125,000.00 each year, of the judgment in favor of T. E. Brown & Co., and to levy and collect in the same manner so much of the $125,000.00 for the year 1877 as might be required to satisfy the balance due on the judgment. The division of the amount to be paid was by agreement between Mr. Brown and Mayor Loague, in order to favor the tax payers and to avoid oppressing them. The judgment has never been appealed from. The city in pursuance of the mandamus in December, 1875, levied a tax on all taxable property of 54 cents on the hundred dollars in value, to be applied on the judgment.

It was discovered that the city tax collector, while collecting the tax so levied on the other taxable property, was omitting to collect it on the taxable capital of merchants. Mr. Brown made an affidavit of the fact, and while Judge Brown was presiding in the circuit court of the United States at Memphis, in March last, he ordered the city to include the taxable capital of merchants amongst the property taxed for the payment of the judgment of T. E. Brown & Co., and to collect the same tax therefrom that he collected from other taxable property, and to pay the same over to Mr. Brown, as commanded by the original writ of mandamus. In pursuance of this order the city tax collector is proceeding by distress, where necessary, to collect the taxes due by merchants for the purpose of paying the amount commanded to be levied and paid. To prevent the collection, many of the merchants combined and employed counsel, who gave opinions that they could successfully resist the tax. On Monday, 24th April, the matter was presented at chambers at Nashville, to Judge EMMONS, of the United States circuit court, who, after hearing counsel on both sides for parts of three days, decided that the tax must be paid. The points made by the counsel for the

merchants were: First. That the circuit court of the United States had no jurisdiction to determine the lawfulness of the tax, and that it should stay the collection until there could be a proceeding in the state court to test its legality. Second. That the city had not at the time the contracts with T. E. Brown & Co. were made, and had not now, any general power to levy a tax for the payment of the judgment; and that the act of 1873 was not in force when the contracts were entered into; and being repealed by the act passed on the 20th day of March, 1875, and approved by the governor on the 23d day of the same month, it could not authorize the tax; and hence, that there was no power in the city to levy the tax for the payment of the judgment, as the court had commanded it to do. And third, that as the law of the state of 1873, instead of providing for the ascertainment of the actual amount of capital that a merchant had invested in his business, did provide that the largest amount of goods that he had on hand at any one time during the year should be taken as his capital, it violated the constitution of the state in respect to equality and uniformity of taxation, and was void. And while it was admitted that the city ordinance was more favorable to the merchant than the state law, in that it levied no privilege tax, and took as his capital not the largest amount of goods he has on hand during the year, but the value of his stock on the 1st July, when his stock is least, yet, as a matter of fact, as the counsel contended, the city was levying and collecting taxes not under its own ordinance, but under the state law.

Humes & Poston, Wright & Folkes, and Clapp & Meux, for plaintiffs.

Wm. M. Randolph, for defendants.

EMMONS, Circuit Judge, delivered an oral opinion, substantially as follows:

That this case came before him as upon a bill in equity filed by tax payers of the city of Memphis, to restrain the execution of a mandamus issued by this court, commanding the municipal officers to levy a specific tax upon specific property.

The main facts in its support are contained in a petition addressed to the court, praying a writ of certiorari and supersedeas to these same municipal officers. This petition has been read as an affidavit in support of the application for an injunction. The court has already decided it had no jurisdiction directly by certiorari, to bring these proceedings before it for review. It thought the proper remedy was by bill in equity or, more appropriately, by petition, setting forth the facts, to stay the proceedings under the order for mandamus. There is a denial that in this instance the complaining tax payers have in fact been assessed under the state law of 1873, upon the largest amount of goods in possession during any day within the year.

It is averred on the contrary by the city, that the assessment was predicated upon the amount of goods on hand on the 1st July, a time when in fact the least amount of goods would ordinarily be held by the merchant. The city ordinance so provides. He said he would not delay for an enquiry into such fact, deeming it immaterial, and would proceed to consider the question, whether there was any power in this tribunal itself, without the aid of a state court, to protect an injured citizen from a violation of his own state constitution, caused by the instrumentality and in direct pursuance of its own decree, specifically directing the exact thing to be done of which the citizen complains. The objection of multifariousness he was glad had been waived by the defendants, otherwise it might present difficulties.

The judge remarked, during the argument, upon the general impropriety of tolerating a bill in equity by restraining proceedings upon a final decree. In a large majority of instances, he was confident such practice was improper. A summary motion upon petition or affidavit would ordinarily obtain all the relief required. Parties were at liberty in this instance, subsequently to shape their pleadings as they pleased, with a view of ultimate relief in the superior court. They could determine whether it would be better to go up on appeal under plenary proceedings in equity, or apply there for a mandamus to coerce, on the part of this court, the order which they ask to stay proceedings. He felt it his duty, in view of the practical difficulties in the way of the citizen's review, to afford every facility in the court's power to further the attempt. Liberty, therefore, would be given nunc pro tunc to change this proceeding, by bill, into a petition and motion to stay proceedings, as they should be advised. He could have little doubt the court had full power to control the execution of its own final process, whenever advised, in any mode, that it involved a violation of local law. The cases of Simms v. Guthrie, 9 Cranch [13 U. S. 19]; U. S. v. Johnson Co., 6 Wall. [73 U. S. 166]; Butz v. Muscatine, 8 Wall. [75 U. S. 575]; Mayor v. Lord, 9 Wall. [76 U. S. 409]; Dunn v. Clarke, 8 Pet. [33 U. S. 1]; Christmas v. Russell, 14 Wall. [81 U. S. 69]; Taylor v. Carryl, 20 How. [61 U. S. 583]; Freeman v. Howe, 24 How. [65 U. S. 450]; Buck v. Colbath, 3 Wall. [70 U. S. 334]; Jones v. Andrews, 10 Wall. [77 U. S. 327],—and other similar adjudications, were referred to, and the doctrine deduced that whenever a specific act was ordered to be done, or particular property named was directed to be seized, the court had power to relieve an injured party from the execution of the order, or the consequences of the seizure.

The nature of the order in this case, and the acts complained of as having been performed under it were referred to, and said to come within the principle of these decisions. They had not been referred to here,

but there were still more applicable judgments in reference to staying proceedings on final process, paying money out of court, applications for relief in cases of receivers, and a large class of similar proceedings, where property was in custodia legis, and where the court took jurisdiction of rights, not on account of the citizenship of the parties, but auxiliary to the principal suit, which brought the thing into custody, and where, if the court did not act, the party would be remediless. He thought it would be a singularly constituted court if it had power to make an order, and had none to restrain its complete execution, when judicially informed that it involved a violation of the state constitution. He had no doubt the abstract power existed to afford the relief asked by the present application. If it were found that the court had directed an assessment which was unlawful, an injunction would go, or the court would, by order, stay the proceedings and modify the rule for mandamus. The denial of the writ of certiorari, therefore, did not leave the citizen remediless. The scope of enquiry in this proceeding was broader still than it was in that. Every fact which had any tendency to sustain a defence, legal or equitable, to the assessment, might properly be made a part of such a record as that before him.

The fear was expressed that it would greatly impair the efficacy of this class of final process, if the rule were established that every irregularity in the assessment of the tax, must result, as learned counsel for these complainants had contended, in an absolute cessation of all action on the part of the court, whose order was being executed, until a certiorari had been obtained by the tax payer, taken to the supreme court of the state, and there, at the will and leisure of the only litigant parties proper to such a proceeding, contested to the end. The suitor in this court would thus be delayed by judicial proceedings to which he was not a party, and over which his own tribunal had no control. A far better rule, and one he thought existing judgments justified, authorized this court to decide all such questions, for the purpose of executing its own process. He should not take into consideration the rectitude of his Brother BROWN'S order. That would be against the course of the court, unless new facts were presented. He saw no reason, however, to doubt its rectitude. Were it before him he would affirm it.

The question was fully presented, then, do the bill and affidavits show the complainants have any grievance of which to complain? He confessed it was with some doubt that he held that the law of 1873 was still in force for the purpose of collecting the present judgment. The facts were referred to at length. The making of the contract in reliance upon the law authorizing taxation per foot front to the full extent of the price to be paid, the fact that all parties then believed that the power of taxation existed, to enable the city to comply with its agreement, the justice and the reasonableness of the common expectation, based upon a public statute having all the forms of legislation, and the financial disappointment and distress resulting from its unconstitutionality, were considered. The legislature, he said, in the performance of a high moral and political duty, had substituted the act of 1873 for the invalid law. It had honestly failed in its duty, misled and deceived the citizens into the expenditure of many hundreds of thousands of dollars, placed upon the streets and used by the complaining and other tax payers of Memphis. As a judge he felt disposed to accept this honest political action of the sovereign power. He would hold the new law where the legislature had placed it, exactly in the stead of their unconstitutional enactment. And, although quite aware none of the judgments upon this subject constituted precise precedents for such a ruling, he hoped a superior court would find in their principle a justification for treating this remedy as if it existed at the date of the contract. He proceeded to apply the principle in the class of cases he referred to to the exigencies of this case. The judgments of Tennessee in respect to retrospective legislation were considered. They were thought to warrant the proposition, that where a remedy had once been accorded, the right to employ it existed, and especially where, as in this case, its employment had actually been entered upon, there was no power in the legislature to take away that remedy without the substitution of some reasonable mode of relief in its place. See Pacific Mail S. S. Co. v. Joliffe, 2 Wall. [69 U. S.] 450. The rule had been applied, and he thought justly, to a change of the remedy created after the inception of the cause of action.

It is the duty in all cases to follow the legislative intent. There can be no doubt it was most substantially the will of the legislature in the enactment of the law of 1873, to afford a remedy specifically for such cases as that before the court. So far as it had power, the object undoubtedly was to place citizens who had been wronged by its unconstitutional action, in the exact legal and financial condition they would have been had the legislature legislated rightfully in the outset, and passed the law of 1873, or a substitute for it, in place of that which had been declared void. The court which treats it differently, will war with the political policy of the state as clearly expressed by this statute. That for some unexplained reason this better policy changed, and the power of keeping promises was repealed, is of no consequence to this argument. If the right once existed to collect this judgment, then he thought a right application of principles laid down by the court of last resort, and

the better reading of the state constitution, forbade an ill-timed repentance on the part of the legislature, and entitled the suitor in courts of justice to the remedies provided for the collection of his judgment, unless an equivalent and reasonable one was given in their stead. If driven to the necessity, he thought that within the decisions, the power of taxation in the general mode provided by law, and to the extent required for its payment, ought necessarily to be implied from a new grant of power by the legislature to a municipal corporation to create a debt, where no other lawful provision was made for its payment. In the two cases of Butz v. Muscatine, 8 Wall. [75 U. S. 575], and Supervisors v. U. S., 18 Wall. [85 U. S. 71], referred to by the complainant's counsel, he saw nothing at war with the liberty on the part of the court to make such an implication, while, in the case of Loan Ass'n v. Topeka, 20 Wall. [87 U. S. 655], he saw what he understood to be an announcement of the doctrine. He thought also the decisions in Tennessee, (Nichol v. Mayor, etc., of Nashville, 9 Humph. 252, and Memphis v. Memphis Gayoso Gas. Co., MSS.), tended in the same direction. Judge EMMONS considered at some length the facts relied upon to show that the taxation complained of was not uniform within the meaning of the state constitution. He saw nothing having any tendency to work such a consequence in the operation of these laws. In their practical administration it might well be that that slight degree of inequality, which could never be prevented in any system, might occur. This had many times been said to be a matter of legislative control, with which the courts should not interfere. The case in 21 Wall. [88 U. S. 284] (Bailey v. Clark) he thought had no application to the meaning of the word "capital" as used in the constitution and revenue laws of the state of Tennessee. Did he, however, perceive some want of uniformity, and if the case cited were, in its principle, applicable to the laws now before him, it would be his duty, in construing a local statute and constitution, to follow the practical interpretation which all the executive and ministerial officers of the state had given them, without objection so far as he could see, since their adoption. The books both English and American, contain numerous judgments where such practical construction has been followed, when quite at war with the literalisms of the law. Especially have the courts said, where constitutions are adopted by the people, and the entire community have expressed their satisfaction with a particular reading by universal action under it, the courts will acquiesce in their judgment. He understood the usage had been uniform in this regard in the state of Tennessee.

After the pronunciation of the preceding judgment a motion was presented by the counsel for the complainants asking the entry of an order granting liberty to the complainants to take proceedings in the state courts to test the legality of the tax.

To this application Judge EMMONS said: "It would be inefficacious unless he stayed proceedings, for which order he had already decided no sufficient cause had been shown." He did not see why the tax was not lawful. The order he thought would be unusual and improper. It could give no force to the state proceedings. It was not a matter for him to decide, but it had been said that the complainants had no remedy if they paid the tax, and the fact had been referred to as a reason for granting the present request, and remarked that he saw no reason why a remedy, as between the taxpayer and the corporation to recover the amount paid, should not be sought in the state tribunals. And if the tax was unlawful, he did not see why they might not have a remedy. If there was any answer to such a remedy—and he would not say it would not be an answer—it would be that the city officials were coerced to their action by the mandate of this court. If entirely confident such would be the consequence, it would make no difference in the present ruling. This court has no right to abdicate its duty of deciding questions legitimately before it, because there is no other appellate tribunal to rejudge its judgments than the supreme court of the United States. In this case a review lies there. He conceded cases might arise in which, from the greater fitness of a state tribunal to determine local questions, he would await action for the judgment of the state court. In an important case recently, such a course was taken in the district of Kentucky. But it was not circumstanced like this one. The question was novel; there had been no chronic action by the state in conformity with that about to be sanctioned by the court, and there was no danger of setting a precedent, which would weaken the general efficacy of proceedings to collect judgments in the tribunal whose action was stayed. He had no doubt of his power to stay proceedings, as requested. That he had already ruled. But he was entirely clear it would be an ill exercise of discretion, where citizens had for years submitted quietly to a system without objection, and who for the first time raised the question of power when it was sought to be exerted in favor of a suitor of the court. He could conceive of few cases where the duty was more plain, than in this, for the court to decide the merits, and not remit them to other suits, and courts over which it has no control.

NOTE [from original report]. After the above decision of Judge Emmons, the merchants applied to Judge C. W. Heiskell, of the Shelby circuit court, for writs of certiorari and supersedeas to stay the collection and test the legality of the tax that was being collected by the city tax collector, under and in pursuance of the mandamus from the circuit court

of the United States. The application being ex parte, the judge granted the writs applied for, and they were issued and served. The city appeared and moved to dismiss the proceeding because of a want of jurisdiction in the state court, the circuit court of the United States already having possession of the subject-matter. The question was argued by the same counsel who argued the case before Judge Emmons, and also by S. P. Walker, city attorney. The state circuit court sustained the motion to dismiss, Judge Heiskell delivering the following opinion:

"The Merchants v. F. C. Schaper et al. T. E. Brown, by a mandamus proceeding, obtained from the circuit court of the United States an order to the city government of Memphis to proceed to levy and collect a tax of fifty-four cents on the $100 worth of taxable property of the merchants, according to the returns of their property on file in the city collector's office. Let it be observed that this judgment of the federal court ordered the levy to be made upon property 'as already listed and returned.' Observe again that this property—merchants' capital—had not been taxed, as had the other property of the city, 'to pay Brown's judgment. By this proceeding of certiorari petitioners seek to bring before the court and have quashed the distress warrants issued by the city tax collector in obedience to this mandamus proceeding. The question that meets the court in limine is that of jurisdiction. If this question is against petitioners, it is decisive of the case, and therefore should be first determined. Position of defendants is, that another court has taken jurisdiction of this matter, and therefore this court can not interfere. To this petitioners reply: This court is not interfering with federal jurisdiction or process; it is only exerting its legitimate revisory jurisdiction over an inferior state tribunal to quash a void proceeding in the hands of a state officer. But how is this court to quash this proceeding—upon what ground? Upon no other than by determining that these warrants are wrongfully issued; that is, that the federal court erred in its judgment in issuing them. For if these distress warrants are void, it is because, as petitioners insist, they are levied upon property not subject to their levy. This is what the federal court determined; It determined that this property—the property levied on—is subject to this levy; its judgment was to levy upon this property, so that it follows necessarily that if this court determines the warrants void, it pronounces upon the correctness of the federal court judgment. Now, if that judgment is erroneous, how can this court or any other, except the federal courts, determine that question? Certainly the judgment of that court is not void. The most that can be said of it is, that it is erroneous and should be reversed. But this is not a revising court. And if it were to determine the question adversely to the correctness of that judgment, what would be the result? Only this—the federal court would enforce its mandate by proceedings of contempt against the city officers, if not against these petitioners themselves; and if this court enforced its judgments, we would have an unseemly conflict of jurisdiction in a system which would, and indeed almost always has, worked harmoniously. It must not be overlooked here that the question involved is not whether this court will come in conflict with the federal court. It is whether it will come in conflict with any court of competent jurisdiction which has obtained jurisdiction of a cause. The rule is, that jurisdiction once obtained is retained until the judgments of the court have been fully executed, subject only to appeal or the injunction process of a court of chancery on some grounds of equitable interference, neither of which jurisdictions this court possesses in this case. The question would be the same if it were a certiorari to a sister state tribunal to bring up some process issued in obedience to a judgment of a chancery court in a like case with the one at bar. It would be the same if this court had jurisdiction of this cause, and the federal courts were to attempt an interference under like circumstances. But those courts have always scrupulously recognized the principal of non-interference with the jurisdiction of state tribunals in such cases as the one at bar, and propriety, policy and principle demand of state courts a like observance of it. It is needless to express an opinion upon the merits of this controversy, as this disposes of the case. The court has no jurisdiction, and to attempt to take it, would be an ungracious, unwarranted, as well as a futile act. Let the supersedeas be discharged, and the petition dismissed. C. W. Heiskell, Judge, etc."

The merchants thereupon appealed from the judgment of the state circuit court, dismissing their petition to the supreme court of Tennessee. T. E. Brown, the plaintiff in the judgment for the payment of which the tax was being collected, thereupon applied by petition to the circuit court of the United States, stating the proceedings that the merchants had taken in the state circuit court, and praying that such proceedings might be had as were necessary to vindicate the jurisdiction and process of the circuit court of the United States, and secure his rights. He made a certified copy of the proceedings in the state circuit court a part of his petition. The merchants appeared by counsel before the court without the issuance or service of process, and the court, Judge Emmons presiding, after hearing the matter, adjudged that the application that had been made to the state circuit court, and the use that had been made of its process, was a contempt of the circuit court of the United States. And he thereupon ordered that the merchants should at once discontinue and abandon their proceedings in the state circuit court, and on the appeal, so far as they attempted or had the effect to stay or interfere with the collection of the tax which was being collected under the mandamus from the circuit court of the United States. And thereupon the merchants agreed in open court to abandon and dismiss their several writs of supersedeas, and that they would neither take nor claim the benefit of a supersedeas to the judgment of the state circuit court dismissing their petition, and that their several appeals should have the effect, and only the effect, of writs of error without supersedeas, and that they would go into the state circuit court and put of record an agreement to the above effect. The court then dismissed the further prosecution of the proceedings for contempt, at the cost of the merchants, and on their application granted them permission to apply to the state supreme court for a supersedeas to the judgment of the state circuit court dismissing their petition, whenever the supreme court of the United States, to which they propose to carry the case decided by Judge Emmons, may decide that the circuit court of the United States has not, or that the state circuit court has, jurisdiction of the matters presented by the proceeding in the state circuit court, and that their application in that event should not be taken as a contempt of the court.

[NOTE. For denial of a motion to dismiss the appeal of the city from a motion to set aside the peremptory mandamus requiring the taxation of merchants' capital, and to vacate the supersedeas of the city on writ of error, see Memphis v. Brown, 94 U. S. 715; and, for affirmation of the order of the circuit court directing the mandamus to issue, see Id., 97 U. S. 300.]