UNITED STATES *ex rel.* HILL *v.* JUDGES OF SCOTLAND COUNTY.

*(Circuit Court, E. D. Missouri, E. D.　October 31, 1887.)*

COURTS—CONFLICT OF STATE AND FEDERAL—LEVY OF TAX—COUNTY BONDS.

 Judgment went against a Missouri county on certain railroad aid bonds issued by it, and the holder applied for *mandamus* to compel a tax levy to pay the judgment. The county judges returned that they had already levied the usual tax; that there was no law, either when the bonds were executed or when the writ was served, authorizing a special levy; that the judgment could only be paid by warrants drawn on the treasury, payable out of the usual county taxes; that there were no funds, and that if they obeyed the writ they would be guilty of a misdemeanor under the laws of the state. As a matter of fact, when the bonds were issued there was a law (Wag. St. Ed. 1872, p. 306, § 21) authorizing counties to "levy a special tax to pay the interest on such bonds, or to provide a sinking fund to pay the principal." In addition, the county courts then had a general power "to audit and settle all demands against the county," and "to levy such sums as were annually necessary to defray the expenses of the county." Wag. St. 441, § 9; page 1193, § 165. *Held*, that the return was insufficient, the judgment having determined the validity of the bonds, and the rights of the holder being fixed by the laws in force at the date of issue, and any order made in the case by the federal court being ample protection to the county judges.

*Mandamus* to Compel the Levy of a Special Tax by the county judges of Scotland county. On demurrer to respondent's return.

*F. T. Hughes* and *John A. Overall*, for relator.

*H. A. Cunningham*, for respondents.

THAYER, J., *(orally.)* In cases 1153 and 1287, consolidated, *(United States ex rel. William Hill* v. *Scotland County,)* the demurrer to the respondent's return to the alternative writ of *mandamus* will be sustained. In this case, omitting the introductory parts of the return, the respondents say:

"That at the date of the execution of the bonds on which the judgment in the case was rendered, there was no law of the state of Missouri, and is no law at the present date, authorizing them to levy any special tax for the purpose of paying the judgment, or for the purpose of paying the bonds."

They say further:

"That in May, 1887, they levied a tax, for county purposes, of five mills upon each one hundred dollars of an assessed valuation of less than two million dollars, and that their predecessors had levied a similar tax in previous years; that, under the state laws now and heretofore in force, the relator's judgment can only be paid by warrants drawn on the county treasury, payable out of taxes levied for county purposes, and that the treasurer has no funds, and that the result would be, if they obeyed the writ, that they would be guilty of grave crimes and misdemeanors, under the laws of the state of Missouri."

This part of the return is obviously an insufficient plea to an alternative writ issued to enforce the payment of a judgment against the county. For the most part, it is a mere recital of the construction placed by the respondents upon certain general laws of the state, which the court is bound to take notice of, as well as to construe. It would have been

more appropriate to have moved to quash the alternative writ, if the reasons stated in this part of the return are valid reasons why the peremptory writ should not issue. The judgment already rendered determines the validity of the bonds[1] merged therein for all the purposes of a proceeding by *mandamus* to enforce its payment, and that judgment is not open to an attack in this supplementary proceeding, although the respondents were not county judges when it was rendered. That proposition is settled beyond cavil in the cases of *Supervisors* v. *U. S.*, 4 Wall. 435, and *Mayor* v. *Lord*, 9 Wall. 409.

The bonds being valid, and it having been necessarily so determined before the entry of the judgment, there is no doubt whatever that under the laws of the state, as they existed when the bonds were negotiated, the county court had ample authority to levy a tax to any amount to pay the same. The supreme court of Missouri, in the case of *State* v. *Shortridge*, 56 Mo. 130, (as I understand the decision,) so held; citing section 34, p. 429, Rev. St. 1855, which remained the law, as the court say, until after 1874, and until after the date of the issue of these bonds, and appears as section 21, p. 306, Wag. St. (Ed. 1872.) In *Ralls Co.* v. *U. S.*, 105 U. S. 736, it was also held that the railroad charter, under which these bonds were issued, conferred ample power to levy a tax for their payment. Furthermore, at the time these bonds were issued, the county courts had a general power " to audit and settle all demands against the county," and "to levy such sums as were annually necessary to defray the expenses of the county." Wag. St. § 9, p. 441, and section 165, p. 1193. If the county court had power to levy a tax to pay the bonds when they were issued, that power has not been, and could not be, subsequently withdrawn, so long as the bonds are outstanding and unpaid, as has been many times held. *Van Hoffman* v. *City of Quincy*, 4 Wall. 535; *City of Galena* v. *Amy*, 5 Wall. 705; *Supervisors* v. *U. S.*, 4 Wall. 435; *Butz* v. *City of Muscatine*, 8 Wall. 575; *Riggs* v. *Johnson*, 6 Wall. 184; and numerous other cases.

In the face of these decisions, it is idle for the plaintiffs to say that they have no power to levy a special tax to pay the judgment, or to say that they made a levy of five mills on the dollar in May last, for county purposes, and can make no further levy. It is not shown whether the rate of taxation for county expenses for 1887 had been fixed before the alternative writ was served, but if it had been, no reason is perceived why an additional levy to pay the judgment might not have been ordered and extended on the tax-book. The laws of this state (sections 6805 and 6806, Rev. St. 1879) simply direct the county judges to fix the rate of county taxation " as soon as may be after the assessor's book is corrected and adjusted." Sections 6710 and 6731 of the Revised Statutes of Missouri, 1879, provide, in substance, that a failure to deliver the assessor's book in time to the county court does not invalidate the assessment, and that the levy is not invalidated by any informality in making the assessment or the tax-list, or on account of the assessment not being

---

[1]See 25 Fed. Rep. 395,

completed within the time required by law. The provisions in the state revenue law as to the time when the various acts shall be done, seem to have been made by the statute merely directory. But, however this may be, an order of this court, made in a case that is clearly within its jurisdiction, is, I apprehend, ample protection to the defendants. *Riggs* v. *Johnson*, 6 Wall. 193.

The balance of respondent's return merely repeats two of the pleas contained in the second amended answer on which the case was originally tried, and contains matter tending to show the invalidity of the bonds. Those pleas were either held bad in point of law, or the proof failed to support them, and it matters not which was the case, as the validity of the bonds cannot be retried in this proceeding. *Supervisors* v. *U. S.*, *supra; Mayor* v. *Lord*, *supra.*

The demurrer will therefore be sustained.